

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-2005

# USA v. Booth

Precedential or Non-Precedential: Precedential

Docket No. 03-3893

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Booth" (2005). *2005 Decisions*. Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 03-3893

————

UNITED STATES OF AMERICA

v.

BRIAN BOOTH,

Appellant

————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 98-cr-00322)
District Judge:  Honorable James M. Munley

————

Submitted Under Third Circuit LAR 34.1(a)
December 6, 2005

Before:  RENDELL, FISHER
and VAN ANTWERPEN, *Circuit Judges*.

(Filed December 29, 2005)

Tina Schneider
44 Exchange Street, Suite 201
Portland, ME  04101
     *Attorney for Appellant*

James T. Clancy
Office of United States Attorney
228 Walnut Street
220 Federal Building and Courthouse
P.O. Box 11754
Harrisburg, PA  17108
     *Attorney for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Brian Booth appeals from the District Court's decision denying his motion to vacate his sentence brought pursuant to 28 U.S.C. § 2255.  Booth was convicted by a jury on two counts relating to his role in setting off a pipe bomb at an apartment building.  Booth contends that his trial counsel – aware of the substantial evidence against Booth and that Booth did not want to cooperate with the Government – rendered ineffective assistance of counsel by not informing Booth that he could have entered an "open" guilty plea to both counts without proceeding to trial, potentially entitling him to a three-level reduction for acceptance of responsibility under the United States Sentencing

2

Guidelines.[1]  Because we conclude that Booth's motion set forth sufficient allegations to require an evidentiary hearing, we will vacate the judgment of the District Court and remand for an evidentiary hearing on the merits of Booth's claims.

I.

Early in the morning of May 15, 1998, simultaneous explosions from two pipe bombs rocked a multi-unit rental property located in Stroudsburg, Pennsylvania.  Fortunately, none of the seven sleeping residents inside the apartment building was injured.  The blast, however, caused significant property damage.  An investigation following the incident revealed that the pipe bombs, which were made out of copper pipes and packed with smokeless powder, had been placed on the rear kitchen door and the front side door of the building.  Additional evidence uncovered during the investigation overwhelmingly established that Booth was responsible for the explosions.

Thereafter, the Government indicted Booth on two counts.  Count one charged Booth with maliciously damaging by explosives property affecting interstate commerce, in violation of 18 U.S.C. § 844(i).  Count two charged Booth with

---

[1]An "open" guilty plea is a plea made by the defendant without the benefit of a plea agreement entered into with the Government.  *See, e.g., United States v. Casiano*, 113 F.3d 420, 423 (3d Cir. 1997).

possession of an unregistered firearm in the form of a bomb, in violation of 18 U.S.C. §§ 5841, 5861(d), and 5871.

Prior to trial, the Government and Booth's trial counsel entered into plea negotiations. The Government's initial plea offer was for Booth to plead guilty to count one of the indictment. In exchange, the Government offered to dismiss count two of the indictment, recommend that Booth be sentenced to the mandatory minimum sentence of 60 months imprisonment, and possibly bring a motion for downward departure pursuant to 18 U.S.C. § 3553(e) if it determined that Booth rendered substantial assistance in the investigation of a possible co-defendant.

Booth rejected the Government's plea offer and made a counter-offer to plead guilty to count two of the indictment in exchange for the Government's dismissal of count one. The Government informed Booth's counsel that it would consider the plea to the lesser charge only if Booth would give a proffer concerning his own culpability and the criminal involvement of any other participants involved in the bombing. Booth balked at the proposal because he did not want to cooperate against anyone else involved in the crime.

Because the parties could not agree on an acceptable resolution of the charges, Booth proceeded to a jury trial. The jury subsequently found Booth guilty of both charges.[2]

---

[2]Five primary witnesses testified against Booth at trial. Vincent Lipari, who lived at the apartment building at the time

4

At the sentencing hearing, the District Court determined that Booth's sentencing range under the Sentencing Guidelines was 78 to 97 months imprisonment. The District Court sentenced Booth to concurrent 90-month sentences of imprisonment, concurrent three-year terms of supervised release, and restitution in the amount of $2,052.[3] The District Court did

---

of the explosion, testified that he had a confrontation with Booth on the previous evening over $40.00 that Booth owed to Lipari. Brian Peters testified that Booth told him that he had an argument with a couple of fraternity brothers who lived at the apartment. Peters further testified that Booth told him that he later went back to the property and placed a pipe bomb on the front door of the house, and that Booth's roommate placed the second pipe bomb on the back door. Aaron Taylor, a former middle school and high school classmate of Booth's, testified that Booth told him that he knew how to construct a pipe bomb in a short amount of time. Michael Padula, a student at East Stroudsburg University who had known Booth since they were in the seventh grade together, testified that Booth told him that he had an altercation with Lipari. When the two began discussing the bombing at 202 Main Street, Booth said to Padula, "you know, well, I did that." Finally, Jason Crater, a long-time friend of Booth's, testified that Booth told him on May 15, 1998, that "he had a problem with them people in that house last night, and that he had a pipe bomb and put it under their porch."

[3]Booth was sentenced under the 1998 version of the Sentencing Guidelines. *See* UNITED STATES SENTENCING

not consider a downward adjustment for acceptance of responsibility pursuant to section § 3E1.1 of the Sentencing Guidelines because Booth had proceeded to trial and challenged his guilt. We affirmed the judgment of conviction on March 14, 2001.

On June 13, 2002, Booth filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Booth alleged in his motion that his trial counsel, aware that the evidence against Booth was overwhelming and that Booth did not want to cooperate with the Government, did not inform Booth that he could have entered an open guilty plea to both counts of the indictment, likely entitling him to a three-level reduction for acceptance of responsibility. Responding to Booth's motion to vacate sentence, the Government argued that "acceptance of responsibility was not an option in [Booth's] case because of the mandatory minimum sentence applicable to the charge against him." In addition, the Government stated that Booth's trial counsel "fully advised Petitioner of his plea options," and that Booth's "belief that he could have received a more favorable plea resolution is a pipe dream."

The Government's response relied primarily upon a declaration from Booth's trial counsel. That declaration corroborates the history of plea negotiations between Booth and the Government and states that Booth had told his trial counsel that "he could not accept the terms of the proffer letter, namely, cooperating against anyone else involved":

---

GUIDELINES § 1B1.11(b)(1) (2000).

6

> Booth was advised by me of the process by which he could obtain a reduction in the sentence he was facing. He chose not to accept the terms of the proffer letter, or, more specifically, to attempt to render substantial assistance to the Government by telling them everything he knew about the crimes and who was involved.

The declaration also states that Booth was informed of all possible defenses and mitigating factors that were available at sentencing, and that Booth was informed of the "extensive factual investigation" conducted by his trial counsel's investigator. Notably absent from the declaration, however, was any indication that Booth's trial counsel had discussed with Booth the option of entering an open plea to counts one and two.

On July 18, 2003, the District Court denied Booth's motion without holding an evidentiary hearing. The District Court concluded that Booth's trial counsel adequately advised him of the consequences of his plea decisions because he fully informed Booth of all plea negotiations with the Government. The District Court characterized Booth's argument that he could have received a lower sentence by entering an open plea as "highly speculative." The District Court stated that Booth had the opportunity for a lesser sentence at count two of the indictment, that he had been aware of the "costs of that option" (i.e., cooperating against a possible co-defendant), and that he had rejected the option and gone to trial because "those costs were not to his liking." The District Court further determined that Booth was required to go to trial on both counts because he chose not to accept the Government's plea offer to plead guilty

7

to count two. The District Court ultimately concluded that Booth's argument that he could have received a lighter sentence was futile because "[e]ven if he could have received a lighter sentence for Count II, his sentence for Count I remains at 90 months."

## II.

Booth appealed the District Court's denial of his motion to vacate sentence, and we granted a certificate of appealability. We have jurisdiction over Booth's appeal pursuant to 28 U.S.C. § 2253. We review the District Court's decision to deny an evidentiary hearing on a motion to vacate sentence for abuse of discretion. *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005).

## III.

Although a district court has discretion whether to order a hearing when a defendant brings a motion to vacate sentence pursuant to 28 U.S.C. § 2255, our caselaw has imposed limitations on the exercise of that discretion. In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). *See also* R. GOVERNING § 2255 CASES R. 4(b). The district court is required to hold an evidentiary hearing "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." *Id.* We have characterized this standard as creating a "reasonably low

8

threshold for habeas petitioners to meet." *McCoy*, 410 F.3d at 134 (quoting *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)). Thus, the district court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief. *Id.* at 131, 134 ("If [the] petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing.").

In this case, Booth alleges that his trial counsel was ineffective because he failed to inform Booth of all possible plea options to resolve his criminal case and entitle him to a more favorable sentence. In order to determine whether Booth's trial counsel was constitutionally ineffective under the Sixth Amendment, we must apply the familiar standard developed in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. Under that standard, a criminal defendant may demonstrate that his representation was constitutionally inadequate by proving: (1) that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance. *Forte*, 865 F.2d at 62 (citing *Strickland*, 466 U.S. at 687, 694). Under the first prong, "[j]udicial scrutiny . . . is highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. In order to establish prejudice, the defendant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We have endorsed the practical suggestion in

9

*Strickland* to consider the prejudice prong before examining the performance of counsel prong "because this course of action is less burdensome to defense counsel." *McCoy*, 410 F.3d at 132 n.6; *see Strickland*, 466 U.S. at 694 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result").[4]

## A. Prejudice

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that the *Strickland* test applies to advice given by counsel in the context of guilty plea discussions. *See id.* at 58 (stating that "the *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"). The Court determined that the prejudice prong in the context of the plea process "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58.[5] Thus, under the prejudice prong,

---

[4]Indeed, as set forth below, the practical suggestion to consider initially the prejudice prong is particularly compelling in this case where our examination of the prejudice prong helps inform our inquiry into the performance of Booth's trial counsel.

[5]In *Hill*, the Court determined that the defendant was not prejudiced because he failed to allege in his habeas petition that

Booth must demonstrate that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence.

The Government disputes that Booth would have received a lower sentence because "the record shows that trial counsel, along with the prosecutor and the probation officer, estimated that the Defendant would not have received the benefit of a reduction for acceptance of responsibility because of the minimum mandatory sentence attached to the crime he committed." The Government, however, erroneously focuses on what Booth's guideline offense level would have been had he entered an open plea *solely* to count one. The Government asserts that, had Booth pled guilty to count one and received a three-level reduction, he would have been subject to a term of imprisonment of 60 months.[6] The Government's argument ignores that Booth was subject to *two counts* of an indictment,

"had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." *Hill*, 474 U.S. at 60.

[6]The Government does not argue that the District Court would have had a basis to reject an open plea to counts one and two in this case. In fact, the Government's argument proceeds on the assumption that a plea would have been accepted by the court, but that Booth would not have been prejudiced since he could not have "received the benefit of a reduction for acceptance of responsibility because of the mandatory minimum sentence attached to the crime he committed."

11

and, absent a plea agreement, the Government would not have voluntarily decided to dismiss the charges at count two.

In this case, the District Court sentenced Booth to concurrent 90-month sentences of imprisonment. Based upon an offense level of 26 (because the two crimes were grouped together pursuant to sections 3D1.1 through 3D1.5 of the Sentencing Guidelines) and a criminal history category of III, Booth's guideline offense level was 78 to 97 months imprisonment. Assuming that Booth would have received a three-level reduction for acceptance of responsibility, he would have been subject to a guideline range of 57 to 71 months; however, because the statutory minimum sentence at count one was 60 months, the guideline range would have been 60 to 71 months imprisonment. UNITED STATES SENTENCING GUIDELINES § 5G1.1(c). Thus, the Government's mathematical calculations ignore the reality of what actually would have happened had Booth entered an open plea to counts one *and* two. Because Booth was actually sentenced to 90 months imprisonment, he arguably received a sentence of 19 to 30 months greater than what he would have received had he entered an open plea to counts one and two.

The Government additionally argues that Booth was not prejudiced because a guilty plea does not entitle a criminal defendant to a three-level adjustment for acceptance of responsibility under the Sentencing Guidelines as a matter of

right.  *See* UNITED STATES SENTENCING GUIDELINES § 3E1.1 cmt. n.3 (1998).[7]

Under section 3E1.1(a) of the 1998 Sentencing Guidelines, a defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to have his offense level decreased by two levels.  UNITED STATES SENTENCING GUIDELINES § 3E1.1(a) (1998).  A defendant may have his offense level decreased by one additional level if: the defendant

---

[7]Contrary to the Government's apparent argument, nothing in the language or application notes to section 3E1.1 provides that courts are precluded from finding that a defendant qualifies for acceptance of responsibility if the reduction would drop the defendant's sentencing range below the statutory minimum sentence.  There is a good reason for this:  the Sentencing Guidelines have a built-in safeguard to prevent a defendant's sentence from dropping below the applicable statutory minimum sentence.  Section 5G1.1(b) provides that, "[w]here a statutorily authorized minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."  UNITED STATES SENTENCING GUIDELINES § 5G1.1(b).  Thus, if Booth would have pled guilty solely to count one pursuant to a plea agreement, Booth could have received a three-level reduction for acceptance of responsibility.  In that event, Booth's statutory minimum sentence would have been greater than his possible guideline sentence, and the 60-month statutory minimum sentence would have been the guideline sentence pursuant to section 5G1.1(b).

qualifies for the two-level reduction under subsection (a); the defendant's offense level is 16 or greater prior to the operation of subsection (a); and the defendant assisted authorities by (1) "timely providing complete information to the government regarding his role in the offense," or (2) "timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources effectively." UNITED STATES SENTENCING GUIDELINES § 3E1.1(b) (1998).

Application note 5 to section 3E1.1 provides that "the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." UNITED STATES SENTENCING GUIDELINES § 3E1.1 cmt. n.5 (1998). According to Application note 1, the district court is directed to consider, *inter alia*, whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable[.]" UNITED STATES SENTENCING GUIDELINES § 3E1.1 cmt. n.1(a) (1998).[8] We have repeatedly held that district courts do not abuse their discretion in denying the two-level adjustment for acceptance of responsibility in situations where the defendant denied his

---

[8] We have stated that an application note to the Sentencing Guidelines is binding "unless it runs afoul of the Constitution or a federal statute, or is plainly erroneous or inconsistent with the section of the guidelines it purports to interpret." *United States v. McQuilkin*, 97 F.3d 723, 731 (3d Cir. 1996).

complicity for the crime and all other relevant conduct. *See, e.g., United States v. Bennett*, 161 F.3d 171 (3d Cir. 1998); *United States v. Veksler*, 62 F.3d 544 (3d Cir. 1995); *United States v. Frierson*, 945 F.2d 650 (3d Cir. 1991); *United States v. Singh*, 923 F.2d 1039 (3d Cir. 1991).[9]

In this case, however, based upon the stage of the proceedings and the allegations in Booth's habeas petition, we must accept that Booth would have truthfully admitted the conduct comprising counts one and two and any additional relevant conduct. In that event, Booth would have likely

---

[9]The Government cites *United States v. Larkin*, 171 F.3d 556, 558 (7th Cir. 1999), for the proposition that the District Court could have denied the adjustment for acceptance of responsibility because Booth "rejected several offers to reduce the charges against him in exchange for information pertaining to the crime." In *Larkin*, however, the court did not reject the three-level reduction because of the defendant's failure to enter into a plea agreement. Rather the court of appeals, as in our decisions cited above, determined that the district court did not abuse its discretion to deny the reduction because the defendant refused to admit his complicity in all relevant conduct. *See id.* at 558 (stating that "the district court based its denial of the acceptance of responsibility reduction on the fact that Larkin, acting on the advice of his lawyer, refused to tell the probation office or the court where he got the marijuana"); *see also id.* at 559 (holding that "it was clearly permissible for the district court to condition the reduction for acceptance of responsibility on Larkin's willingness to provide this information").

15

received a three-level reduction for acceptance of responsibility. Booth was prejudiced because, by proceeding to trial and becoming ineligible for the three-level adjustment for acceptance of responsibility, he was exposed to an additional 19 to 30 months imprisonment. As a result, we cannot find that the allegations in Booth's habeas petition conclusively bars him from demonstrating prejudice under *Strickland*.

## B. Performance

The Government argues that Booth's trial counsel did not perform unreasonably because he entered into extensive plea negotiations with the Government which resulted in two proposed plea agreements. The flaw in the Government's argument is that it assumes that Booth had only two possible options: either agree to the Government's proposed plea agreement at count two, or proceed to trial. Booth's habeas petition, however, is premised on the argument that his trial counsel, realizing the overwhelming weight of the evidence and knowing that Booth continually objected to cooperating with the government, should have informed him of a third option: entering an open plea and receiving a three-level reduction in his offense level for acceptance of responsibility.

Booth's *pro se* habeas petition contains a detailed factual statement clearly setting forth allegations that his trial counsel never informed him that he could enter an open plea. The Government asserts that the trial counsel's declaration, stating that he discussed with Booth "all defenses that were available to [Booth] at sentencing and . . . any factors that could mitigate the sentence he could receive," conclusively establishes that Booth

16

was informed he could enter a guilty plea without entering into a plea agreement. The declaration, however, focuses almost exclusively on the history of the plea negotiations, rather than the specific allegations in Booth's petition. In this respect, the declaration is more probative of what it does not address rather than what it does.

The determination of whether trial counsel's failure to inform Booth that he could enter an open plea was constitutionally deficient must be viewed through the prism of the specific facts of this case. In this respect, two facts are key: (1) the District Court itself recognized (and the Government does not dispute) that the evidence against Booth was "overwhelming"; and (2) the declaration of Booth's trial counsel acknowledges that Booth did not want to enter into a plea agreement because he did not want to provide incriminating information to the government regarding a possible co-defendant's role in the offense. Under these facts, it is irrelevant that Booth may have received a better sentence had he accepted the proposed plea agreement because Booth was never going to provide the government with incriminating information against a possible co-defendant. Booth's reluctance to cooperate with the Government was the deal-breaker. From this reluctance to cooperate, the Government wants us to determine that Booth's only other option was to go to trial.

It is clear, however, that another reasonable option was available. We have stated that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer" because "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will

17

often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 44 (3d Cir. 1992) (quoting *Hill*, 477 U.S. at 56-57). If a defendant raises sufficient allegations that his counsel's advice in helping to make that decision was "so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer," the defendant is entitled to an evidentiary hearing on the merits of his habeas petition. *Id.* at 43-44; *see also United States v. Day*, 285 F.3d 1167, 1172 (9th Cir. 2002) (holding that the defendant was prejudiced because his counsel gave him erroneous advice that led him to proceed to trial, thus precluding him from receiving a three-level reduction for acceptance of responsibility).

In this case, Booth has raised sufficient allegations that his trial counsel deprived him of the opportunity to make a reasonably informed decision regarding whether to change his plea or proceed to trial because his trial counsel failed to inform him that he could enter an open plea. As a result, Booth was potentially subject to an increase of 19 to 30 months imprisonment based upon his trial counsel's failure to advise him about all possible plea options. These allegations, which have not been rebutted by the declaration of Booth's trial counsel, may support Booth's claim. Thus, the District Court erred in denying Booth's habeas petition without holding an evidentiary hearing.

IV.

For the reasons set forth above, we conclude that Booth is entitled to an evidentiary hearing on the merits of his habeas

18

claim.  Accordingly, we will reverse and remand the decision of the District Court for further proceedings consistent with this opinion.