NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2972
_____

UNITED STATES OF AMERICA

v.

JOHN NIGRO,
                    Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-05-cr-00062-001)
District Judge: Honorable Jan E. Dubois
_____

Submitted Under Third Circuit LAR 34.1(a)
March 14, 2011

Before: RENDELL, BARRY and CHAGARES, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: March 24, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Appellant John Nigro appeals the District Court's decision denying his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. We will affirm.[1]

**Factual & Procedural Background**

On November 1, 2004, the government obtained an arrest warrant for Nigro in connection with the burglary of a residence in Philadelphia on October 12, 2004. On December 10, 2004, the police received information that Nigro was armed with a gun at a residence on Gladstone Street in Philadelphia. Upon arriving at the residence, the police found Nigro curled up in the backyard, lying next to a green bag. The police arrested him and discovered a loaded .38 caliber gun in the green bag.

In light of Nigro's numerous prior felony convictions,[2] a grand jury returned an indictment charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1).[3] Federal Defender Kai Scott was appointed to represent Nigro. Following the indictment, Nigro participated in an "off-the-record" proffer session, during which he admitted possessing the gun and explained how he obtained it. The

---

[1] The District Court had jurisdiction over this case by virtue of 28 U.S.C. § 2255. We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 2253.

[2] Nigro had twenty criminal history points, resulting from thirteen adult convictions, which included six burglary offenses, in addition to numerous juvenile convictions.

[3] The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), states, "[i]n the case of a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both . . . such person shall be fined under this title and imprisoned not less than fifteen years . . . ." Pursuant to §§ 924(e)(2)(B) and (e)(2)(B)(ii), a "violent felony" includes a "burglary," which is punishable by imprisonment for a term exceeding one year.

2

session ended without a plea agreement, as Nigro stated that "[he] didn't want to tell on anybody."

Following the proffer session, Scott filed two motions on behalf of Nigro seeking to suppress the gun recovered at the time of arrest. Due to a disagreement with Scott, Nigro withdrew the suppression motions and moved to dismiss Scott. The District Court then appointed Mark Greenberg to represent Nigro, who then reinstated the suppression motions and moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). After the Court initially denied the motion for a *Franks* hearing, Nigro filed a *pro se* motion requesting such a hearing; the Court held a hearing, after which it denied the *Franks* and suppression motions.

Nigro proceeded to trial, where a jury found him guilty of violating 18 U.S.C. § 922(g)(1). Initially, the Probation Office determined that his base offense level was twenty-four under U.S.S.G. § 2K2.1(a)(2).[4] Subsequent to his conviction, but before sentencing, Nigro discovered and informed his trial counsel of the Supreme Court's decision in *Shepard v. United States*[5]; his counsel then successfully argued that the

---

[4] This section applies where a defendant has two prior felony convictions for crimes of violence or a controlled substance offense. If a defendant has only one prior felony conviction for a crime of violence or a controlled substance offense, the base offense level is twenty. U.S.S.G. § 2K2.1(a)(4)(A).

[5] 544 U.S. 13 (2005). As mentioned, the ACCA's fifteen year mandatory minimum sentence applies to a defendant who committed three previous violent felonies or serious drug offenses. (*See supra*, note 3). In *Taylor v. United States*, the Supreme Court held that a burglary qualifies as a violent felony under the ACCA if it is a "generic" burglary, defined as an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. 575, 599 (1990). In *Shepard*, the Court held that in order to prove that a defendant had committed previous generic

3

offense level was twenty – as opposed to twenty-four – because the government could not provide the documentation permissible under *Shepard* to prove that Nigro's burglary convictions were "crimes of violence," as defined in U.S.S.G. § 4B1.2.

In turn, the Probation Office concluded that Nigro did not qualify as an armed career criminal under 18 U.S.C. § 924(e), and therefore was not subject to the mandatory fifteen year minimum sentence dictated by that statute. The government agreed that Nigro's base offense level was twenty, as prescribed by U.S.S.G. § 2K2.1(a)(4)(A), and that his advisory guideline range was seventy to eighty-seven months. Due to the seriousness of Nigro's criminal record, the government moved for an upward departure under U.S.S.G. § 4A1.3, and defense counsel then recommended that the Court sentence Nigro to ninety-six months; the government did not object to this recommendation. The District Court sentenced Nigro to a prison term of ninety-six months.

Following his conviction and imposition of sentence, Nigro filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, alleging, *inter alia*, that he received ineffective assistance of counsel. Specifically, he averred that his trial attorney had advised him that due to his criminal record, he would be subject to the ACCA's fifteen year mandatory minimum sentence regardless of whether he proceeded to trial. Nigro argued that had his counsel properly advised him about the impact of *Shepard* on

---

burglaries, as opposed to non-generic burglaries, the prosecution could only rely on the "terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 544 U.S. at 26. The government cannot rely on police reports or complaint applications as proof of the nature of the previous burglaries. *Id.*

his possible sentence, namely, that the government could not utilize his prior burglary convictions to qualify him as a violent felon under the ACCA, he would have pled guilty in order to receive a sentence reduction for acceptance of responsibility.[6] In support of his testimony asserting that he would have pled guilty, Nigro highlighted that a plea deal would have led to a sentence that was twenty-one to twenty-seven months less than what he received.

The District Court found that Nigro's trial attorney's performance was deficient in failing to advise Nigro of the ramifications of *Shepard*; however, the Court ruled that this deficiency did not prejudice Nigro, and this appeal followed. We agree and will affirm the District Court's order.

## Discussion

We "exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to the court's factual findings." *United States v. Cepero*, 224 F.3d 256, 258 (3d Cir. 2000). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of*

---

[6] Specifically, the defendant testified:
> Q:     If in fact you had known that the 15 years might not have been on the table that you were going to get a guideline sentence what would you have done?
> A:     Pled guilty.

(App'x at 429-30.) The defendant also highlights that he had attended a proffer session as proof that he would have been willing to plead.

*Bessemer City*, 470 U.S. 564, 573-74 (1985). Furthermore, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.* at 575.

In order to prevail on an ineffective assistance of counsel claim, "the defendant must show that counsel's performance was deficient," meaning "that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Additionally, "the defendant must show that [counsel's] deficient performance prejudiced the defense." *Id.* at 687. The defendant suffered prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Furthermore, this Court has held that "a defendant has the right to make a reasonably informed decision whether to accept a plea offer," and that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992).

Here, the District Court held – and it is not contested – that Nigro's trial counsel was deficient by not advising him about the implications of *Shepard*. The issue presented is whether this deficiency prejudiced Nigro, that is, whether there is a reasonable probability that he would have pled guilty had he been advised about *Shepard*.

6

In *United States v. Booth*, 432 F.3d 542, 549 (3d Cir. 2005), we held that a defendant was entitled to an evidentiary hearing on a § 2255 petition to decide whether his attorney's failure to instruct him that he could enter open guilty pleas was prejudicial, where the asserted failure and decision to proceed to trial potentially resulted in an additional imprisonment of nineteen to thirty months. *Id.* We found error in the district court's decision not to hold an evidentiary hearing to determine whether the defendant would have pled guilty and received a more lenient sentence. *Id.* at 545.[7]

In contrast, the District Court here did hold an evidentiary hearing to determine the validity of Nigro's habeas motion. Specifically, the Court heard testimony from both Nigro and his trial counsel with regard to his willingness to plead, and found Nigro's contentions not to be believable or credible. The trial counsel's testimony demonstrated that Nigro "hated cops" and that he was adamant the police lied when they obtained the arrest warrant. These facts suggest that Nigro did not intend to plead, regardless of whether he was classified as an armed career criminal and subject to the mandatory minimum fifteen year sentence. This conclusion is buttressed by the fact that trial counsel could not have guaranteed Nigro that he would not be subject to the ACCA's mandatory minimum sentence, but rather only could have suggested that the government might have difficulty in proving that he should be subject to it.

---

[7] Nigro relies on additional cases for the proposition that the disparity between sentences is sufficient evidence that he would not have gone to trial had he known that a less lengthy sentence was available. *See Day*, 969 F.2d at 43 ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."); *United States v. Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982). As the government notes, however, the relative disparity between potential sentences is not that apparent given Nigro's extensive criminal record.

7

Nigro argues that the proffer session is evidence of a willingness to plead. This is unpersuasive, however, given that at the time of the proffer session, Nigro mistakenly believed that his cooperation could lead to a sentence less than the mandatory fifteen year minimum. (App'x at 428.) Despite this belief that cooperation could reduce his sentence below the fifteen year minimum threshold, Nigro was nevertheless unwilling to continue the proffer session because he did not want to "tell on anybody." Accordingly, the District Court's conclusion that Nigro would not have pled guilty had he known that the ACCA might not apply was not clearly erroneous.

As a result, Nigro failed to demonstrate "a reasonable probability" that, but for his counsel's error, he would have pled guilty.

## Conclusion

For the foregoing reasons, the District Court did not clearly err in crediting the testimony and we will affirm its order.