NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4826
_____

UNITED STATES OF AMERICA

v.

WENDY K. WEIKAL-BEAUCHAT,
                                        Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-13-cr-00240-001)
District Judge: Honorable John E. Jones, III

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 20, 2016

Before: JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: February 4, 2016)
_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

    Wendy Weikal-Beauchat appeals the District Court's judgment of sentence

_____

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

imposed after she pleaded guilty to wire fraud and money laundering in violation of 18 U.S.C. §§ 1343 and 1957. We will affirm.

I

In the early 2000s, Weikal-Beauchat practiced law at Beauchat & Beauchat in Gettysburg, Pennsylvania. Her practice included estate planning, trust planning, and long-term care planning. In 2007, she began stealing client money from her Interest on Lawyer's Trust Account (IOLTA) at M&T Bank in order to meet firm expenses and fund personal purchases. To conceal her theft, Weikal-Beauchat provided fraudulent financial statements, tax forms, and certificates of deposit (CDs) to her clients and covered client withdrawals with misappropriated funds.

In 2011, two of Weikal-Beauchat's clients suspected impropriety and filed a complaint against her with Pennsylvania's Office of Disciplinary Counsel (ODC). Operating under the auspices of the Disciplinary Board of the Supreme Court of Pennsylvania, ODC conducts investigations into attorney misconduct and makes criminal referrals to law enforcement where appropriate.

Weikal-Beauchat twice met with an ODC investigator, once in December 2011 and again in August 2012, and attempted to cover up her misdeeds by providing the investigator with false documentation, including fabricated bank statements and copies of fraudulent CDs. She failed to admit any of her crimes. Around this time, and independent of the ODC investigation, M&T Bank contacted the FBI to report questionable

2

transactions related to Weikal-Beauchat's IOLTA account, including that it had received fraudulent M&T Bank CDs. The FBI opened an investigation.

In September 2012, the ODC investigator met with Weikal-Beauchat a third time, pressed her on the veracity of the CDs she had turned over, and asked to see the originals. Although she agreed to the request, Weikal-Beauchat fabricated a story about "a serious employee issue" that needed to be corrected before she could comply. App. 109. Less than a month later, the IRS opened an investigation into whether Weikal-Beauchat had misappropriated client funds and laundered money.

Approximately three months later, Weikal-Beauchat signed a resignation statement giving up the practice of law in Pennsylvania. In doing so, she admitted—for the first time—that she had misappropriated client money and had attempted to conceal her crimes by submitting fraudulent documents and making misrepresentations to ODC.

In November 2013, Weikal-Beauchat was charged with and pleaded guilty to wire fraud and money laundering in violation of 18 U.S.C. §§ 1343 and 1957. The United States Probation Office prepared a Presentence Report (PSR), which, among other things, considered the United States Sentencing Guidelines (USSG) and set Weikal-Beauchat's offense level at 32. Included in the offense-level calculation was a two-level enhancement for obstruction of justice in accordance with USSG § 3C1.1. Based in part on this offense level, Weikal-Beauchat's Guidelines range was 121 to 151 months' imprisonment.

Prior to sentencing, Weikal-Beauchat raised several objections to the PSR,

3

including an objection to the obstruction of justice enhancement. The District Court had "no trouble" concluding that the enhancement was "richly deserve[d]" and overruled the objection. App. 32, 34. The Court determined that "Weikal-Beauchat's fraudulent conduct during the ODC inquiry, although primarily occurring before the start of the [federal] investigation of the instant offense, 'was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.'" App. 32–33 (quoting USSG § 3C1.1 app. n.1). It also found that "Weikal-Beauchat's actions during the ODC investigation, particularly in producing false documentation to the auditor, were unarguably purposed to frustrate inquiry into her underlying crimes." App. 33.

The District Court imposed an above-Guidelines sentence of 180 months' imprisonment. Weikal-Beauchat filed this appeal.

## II

The District Court had jurisdiction to sentence Weikal-Beauchat under 18 U.S.C. § 3231. We have jurisdiction to review its judgment under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "We exercise plenary review over the District Court's interpretation and application of the Guidelines, we review determinations of fact for clear error, and we 'give due deference to the district court's application of the guidelines to the facts.'" *United States v. Zabielski*, 711 F.3d 381, 386 (3d Cir. 2013) (internal citations omitted).

### A

Weikal-Beauchat argues that the sentencing enhancement she received for

4

obstruction of justice runs afoul of *United States v. Jenkins*, 275 F.3d 283 (3d Cir. 2001).

In *Jenkins*, we interpreted USSG § 3C1.1 and concluded that, in situations where the

defendant's "obstructive conduct relates only to an ongoing state prosecution, with no

discernible effect on the federal proceedings, enhancement [for obstruction of justice] is

improper." *Id.* at 290. For the enhancement to apply, "there must be a nexus between the

defendant's conduct and the investigation, prosecution, or sentencing of the federal

offense." *Id.* at 291. Weikal-Beauchat insists that no nexus exists in this case since her

obstructive conduct—making false statements and submitting fraudulent documents to

the ODC—did not affect the investigations by the FBI or IRS.

This argument misses the mark. The Court in *Jenkins* explicitly tied its "nexus"

rule to contexts in which "[t]he federal proceedings [were] obstructed or impeded by the

defendant's conduct." *Id*. Here, the District Court made no attempt to show that Weikal-

Beauchat's obstructive tactics had any impact on federal proceedings. That is why the

Court did not rely on (or even cite) *Jenkins* in finding USSG § 3C1.1 applicable. Rather,

it cited a post-*Jenkins* application note to § 3C1.1 which provides that "[o]bstructive

conduct that occurred prior to the start of the investigation of the instant offense of

conviction may be covered by this guideline if the conduct was purposefully calculated,

and likely, to thwart the investigation or prosecution of the offense of conviction."

Sentencing Guidelines for United States Courts, 71 Fed. Reg. 28,063, 28,072 (May 15,

2006). Bound by this application note, *see, e.g., United States v. Booth*, 432 F.3d 542, 548

n.8 (3d Cir. 2005), the District Court concluded that, since Weikal-Beauchat's actions "were unarguably purposed to frustrate inquiry into her underlying crimes," the § 3C1.1 enhancement was proper. App. 33.

Weikal-Beauchat addresses the Court's analysis of the application note in her reply brief. She argues that, even if her conduct was purposefully calculated to thwart a federal investigation, it was not "likely" to do so. She contrasts her conduct with other "forms of obstruction"—including bribing a key fact witness and fleeing the country— which "by their nature" are "likely to thwart" a subsequent investigation or prosecution. Reply Br. 5. Far from obstructing a federal investigation, she argues, the steps she took to cover up her misdeeds invited so much skepticism that, had the ODC made federal authorities aware of them, the federal investigation would actually have been *facilitated*. Accordingly, she concludes that nothing she did was "likely" to thwart federal efforts and the application note cannot support her sentencing enhancement.

Weikal-Beauchat's argument is illogical. While it is true that some obstructive measures are particularly likely to stymie a federal investigation, it does not follow that other measures are *un*likely to do so. In fact, Weikal-Beauchat fails to cite any authority for her position that the nature of her conduct places her outside the scope of the application note. Moreover, there are good reasons to conclude that her conduct was likely to thwart the efforts of federal authorities. Regardless of whether the federal investigations would have progressed had the FBI or IRS been made aware of Weikal-

Beauchat's communications with ODC, the relevant point is that neither agency was made aware because ODC never contacted them. Because ODC's mission includes making criminal referrals to law enforcement, Weikal-Beauchat's duplicity toward ODC was likely to obstruct the flow of information to federal authorities as they investigated her crimes. *See* USSG § 3C1.1 app. n.4(C) (providing, as an example of conduct to which the enhancement applies, "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding").

*     *     *

For the foregoing reasons, we will affirm the District Court's judgment of sentence.