NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3138
_____

UNITED STATES OF AMERICA

v.

GARY E. VAUGHN,
                              Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-09-cr-00167-001)
District Judge: Honorable John E. Jones III
_____

Argued July 12, 2017
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, *Circuit Judges*.

(Filed: August 15, 2017)

Frederick W. Ulrich
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
        *Counsel for Appellant*

Phillip J. Caraballo-Garrison
Office of the United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
        *Counsel for Appellee*

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*.

Gary Vaughn has alleged that his attorney provided him ineffective assistance of counsel during the plea-bargaining process, failing to adequately communicate with him about the merits of a 60-month plea offer that he ultimately turned down. The only direct evidence of what was discussed about this plea offer comes from dueling affidavits: Vaughn says that his attorney did not provide him necessary information, while his attorney says that he did. Because these conflicting accounts do not conclusively resolve the factual dispute, the District Court erred by not conducting an evidentiary hearing to determine the advice Vaughn's counsel provided, whether it was deficient, and, if so, whether such deficiency caused prejudice. We will vacate and remand.

I.      **BACKGROUND**

A federal grand jury returned an indictment against Vaughn, charging him with conspiracy to commit money laundering, conspiracy to commit mail and wire fraud, mail fraud, and the use of a fictitious name in relation to mail fraud, and sought forfeiture of the proceeds of his crimes. From May 2009 to January 2011, he was represented by attorney Steven Rice, whose conduct is not at issue in this case. In January 2011, attorney Frank Sluzis took over Vaughn's representation in this case.

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

This case involves two plea deals offered to Vaughn. In August, 2011, the Government offered Vaughn an agreement under which he would plead guilty to conspiracy to commit money laundering (Count 1) and conspiracy to commit mail and wire fraud (Count 2). If the District Court accepted the plea, he would receive a guaranteed 60-month prison sentence. *See* Fed. R. Crim. P. 11(c)(1)(C) (stating that if the parties "agree that a specific sentence . . . is the appropriate disposition of the case," then "such a recommendation or request binds the court once the court accepts the plea agreement"). Ultimately, Vaughn turned down this offer.

Vaughn and Sluzis's affidavits provide very different accounts of the conversations they had regarding this initial, 60-month offer. In Vaughn's affidavit, he claimed that Sluzis refused to tell him what his sentence exposure would be if he were to go to trial, saying that "he only practiced in facts not fairy tales and further that he practiced in guarantees not what ifs." App. 192. Vaughn stated that because he could not gauge the benefit of the plea deal, he did not accept it. In contrast, Sluzis's affidavit stated that he provided Vaughn with calculations as to the likely Guidelines range, estimating that the Guidelines range for Count 1 would be 57-71 months and the range for Count 2 would be 78-97 months.[1] He stated that he discussed the offer at length with Vaughn.

---

[1] At one point in his brief, Vaughn recounts that Sluzis provided this Guidelines estimate, citing to Sluzis's affidavit. But counsel clarified at argument that he believed he was obligated to restate the facts as the District Court had found them. Accordingly, we do not take this to be a concession.

The government offered another plea deal in November, 2011. Again, Vaughn would plead guilty to Counts 1 and 2, but this time, there would be no binding recommendation as to sentencing. Vaughn accepted this second plea offer. Vaughn alleges in his affidavit that Sluzis pushed him to accept this deal, and told Vaughn that the judge 'hinted' that he would sentence him below the guidelines. App. 193. He also again alleged that Sluzis refused to explain to him the alternative to taking the deal or the worst-case outcome of proceeding to trial.

The District Court held a change-of-plea hearing in accordance with Vaughn's new desire to plead guilty. At this hearing, Vaughn testified, under oath, that he had gone over the charges and the plea deal with Sluzis. Vaughn also testified that he agreed with the Government's summary of the plea agreement, which was recited at the hearing, and understood that the court was free to sentence him up to the statutory maximums, which were twenty and five years for the two counts, respectively. At the same hearing, Sluzis stated that he had provided Vaughn with a Guidelines estimate of 57-71 months for Count 1 and 78-97 months for Count 2. The District Court accepted Vaughn's guilty plea for both counts.[2]

The United States Probation Office thereafter prepared a Presentence Investigation Report ("PSR"). The PSR stated that Vaughn's base offense level was 6, and that the following enhancements applied: (1) a 16-level increase applied under U.S.S.G. § 2B1.1(b)(1)(I) because Vaughn's conduct caused a loss of more than $1,000,000 and

---

[2] Pursuant to the plea agreement, Vaughn also agreed to forfeit $900,000, as provided for in the indictment.

4

less than $2,500,000; (2) a two-level increase applied under U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims; (3) a two-level increase applied under U.S.S.G. § 2B1.1(b)(4) because Vaughn was in the business of receiving and selling stolen property; and (4) a four-level increase applied under U.S.S.G. § 3B1.1(a) because Vaughn was an organizer or leader of a criminal activity that involved five or more participants. The PSR also recommended that Vaughn not receive credit for accepting responsibility for his crimes because, though he pleaded guilty, the letter he submitted minimized his conduct. As a result, the PSR concluded that Vaughn's total offense level was 30, and his criminal history category was IV, which resulted in an advisory sentencing Guidelines range of 135-68 months' imprisonment.

Sluzis at first objected to only one aspect of the PSR—whether Vaughn accepted responsibility—prompting Vaughn to hire new counsel to provide a second opinion on the proper calculation of the loss and forfeiture amounts. Based on that advice, Sluzis added another objection to the PSR, prompting the Government to agree to reduce the loss amount. This led to a new Guidelines Range of 92-115 months.

Emails sent by Vaughn to Sluzis after the PSR was received provide further evidence that Sluzis and Vaughn had discussed the likely sentencing effects of Vaughn pleading guilty to the final plea offer. Vaughn complained, for example, that "You said that Judge Jones would sentence me far below the guidelines of which you stated were 48-72 months. . . . It doesn't seem that we are even close to that now." App. 282.

At sentencing, Sluzis sought probation. The Government recommended sentencing within the 92-115 months range. The District Court sustained both of

5

Vaughn's objections, and further decided to vary downwards, finding the Guidelines still to be "a bit of an overreach," considering the amount of loss. App. 159. Ultimately, the District Court imposed concurrent terms of seventy-two months' imprisonment on Count 1 and sixty months on Count 2, as well as three years' supervised release, and forfeiture of $900,000.

About a year later, Vaughn filed a motion to vacate or correct his sentence under 28 U.S.C. § 2255, claiming that Sluzis provided ineffective assistance of counsel during the plea-bargaining and sentencing processes. The District Court denied the motion without a hearing,[3] finding that Sluzis's affidavit was corroborated by the record of the plea hearing and that Vaughn was informed of the consequences of rejecting the first plea offer when he did so.

Vaughn filed a notice of appeal, and this Court granted a certificate of appealability on two sets of issues. First, we granted a certificate of appealability on Vaughn's claims that Sluzis was ineffective for failing to adequately advise him of the benefits of the first, 60-month plea offer, including whether the District Court should have held an evidentiary hearing on this claim. Second, we granted a certificate of appealability with respect to Vaughn's claim that Sluzis ought to have objected to the District Court's application of four sentencing enhancements. We denied a certificate of appealability on all other claims, including Vaughn's claims regarding the forfeiture of

---

[3] Notably, through much of the litigation in the District Court, the Government stated that an evidentiary hearing would be necessary on Vaughn's ineffective assistance claims.

6

$900,000.  Thus, Sluzis's advice with respect to the final, accepted plea offer is not at issue in this appeal.

## II.    JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 2255.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## III.    ANALYSIS

Vaughn's primary contention on appeal is that the District Court erred by failing to hold an evidentiary hearing before it ruled on his claim that Sluzis provided ineffective assistance of counsel with respect to the first, 60-month plea offer, which he had rejected.[4]  A district court's denial of an evidentiary hearing in a habeas proceeding is

---

[4] Vaughn also claims that Sluzis was ineffective for failing to object to the application of four sentencing enhancements.  These objections would have been frivolous in light of the record and thus Sluzis was not deficient for failing to pursue them.  In addition, Vaughn was not prejudiced by the failure to object because the objections lack merit and hence would not have changed the resulting Guidelines calculations.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).  First, with respect to the loss amount, Sluzis filed an objection to the loss calculation that the District Court sustained, which resulted in a loss amount of between $400,000 and $1,000,000 and reduced his offense level by two from that recommended in the PSR.  Moreover, there is no non-frivolous basis for Vaughn to argue for a further reduction since, at the plea hearing, Vaughn confirmed that the Government could prove that he laundered at least $531,000 from the sales of stolen property.
Second, Vaughn has presented no basis to conclude that the two-level increase to his offense level under U.S.S.G. § 2B1.1(b)(4) was improper.  The enhancement applies to offenses that involve 10 or more victims, and the PSR identified 26 victims.
Third, because receiving and selling stolen property was at the heart of Vaughn's criminal conduct and Vaughn admitted as much during the plea hearing, it would have been futile for Sluzis to object to the application of a two-level enhancement under U.S.S.G. § 2B1.1(b)(4) for being "in the business of receiving and selling stolen property."
Finally, at his plea hearing, Vaughn acknowledged that he "solicit[ed] and enlist[ed] numerous runners," App. 77, 81, which established that he was an organizer or

7

reviewed for abuse of discretion. *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015) (citing *United States v. Lilly,* 536 F.3d 190, 195 (3d Cir. 2008)). However, 28 U.S.C. § 2255(b) mandates that the court hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Thus, the District Court is obligated to—and abuses its discretion if it does not—hold a hearing if the habeas petition "allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (alterations in original) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005). In assessing whether a hearing is necessary, the court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Id.* (quoting *Booth*, 432 F.3d at 545).

Vaughn seeks relief based upon Sluzis's allegedly ineffective assistance in failing to discuss his sentence exposure at the time of the 60-month plea offer. The Sixth Amendment's guarantee of effective counsel extends to plea bargaining, *Lafler v. Cooper*, 566 U.S. 156 (2012), including to plea offers that were rejected, *Missouri v. Frye*, 566 U.S. 133 (2012).[5] Claims of ineffective assistance during plea bargaining are analyzed under the familiar two-part *Strickland* standard, requiring performance below an objective standard of reasonableness and prejudice. *Lafler*, 566 U.S. at 162-63.

leader of a criminal activity that involved at least five participants, warranting a four-level increase under U.S.S.G. § 3B1.1(a).

[5] This is unaffected by the Supreme Court's recent decision in *Lee v. United States*, 137 S. Ct. 1958 (2017). That opinion addresses the standard when a plea is accepted due to an attorney's incompetence, not when it is rejected. *Id.* at 1965 & n.1.

To effectively assist their clients in the plea bargaining process, counsel must provide defendants facing a potential guilty plea "enough information 'to make a reasonably informed decision whether to accept a plea offer.'" *Bui*, 795 F.3d at 367 (quoting *Shotts v. Wetzel,* 724 F.3d 364, 376 (3d Cir. 2013)). We have previously identified one particularly important piece of information for that decision: "Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). This obligates counsel not only to communicate the statutory maximums and minimums, but also requires counsel "to know the Guidelines." *Bui*, 795 F.3d at 367 (quoting *United States v. Smack,* 347 F.3d 533, 538 (3d Cir. 2003)). That said, counsel's obligations to explain possible sentencing outcomes are not all-encompassing. Counsel need not provide "anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines," *Day*, 969 F.2d at 43, nor must she give "an exact number or close estimate of the maximum sentencing exposure." *Shotts*, 724 F.3d at 376.

Under this standard, Vaughn's allegations—if taken as true—would mean that Sluzis's performance was deficient. Vaughn contends that Sluzis refused entirely to communicate his likely Guidelines exposure and thereby denied him the information he needed to make an informed decision whether to accept the first plea deal. We must take these allegations as true unless the record shows them to be "clearly frivolous." As the Government admitted at argument, the record only provides two accounts of what Vaughn and Sluzis discussed at the time the 60-month offer was on the table: Vaughn's

9

and Sluzis's. It is one person's word against another—hardly a clear resolution on the face of the record—and precisely the sort of contested situation in which an evidentiary record is necessary to resolve disputed facts.

The District Court erred by pointing to the "sworn statements made by the Defendant at his change of plea hearing" as probative of what counsel had told Vaughn. App. 441. At that hearing, Vaughn testified that Sluzis had explained the legal effect of the plea hearing, and such statements "carry a strong presumption of verity" that "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).[6] But those statements were made at the hearing that concerned the plea offer that Vaughn actually accepted, not the 60-month offer that he turned down. At the hearing, Vaughn was not asked, and did not testify, about his conversations with Sluzis about the earlier 60-month offer, which by that point was no longer relevant.[7] The emails between Vaughn and Sluzis, sent after Vaughn pled guilty, likewise do not clarify anything about what was said during the relevant time period: when the 60-month offer was on the table. Thus, the record does not conclusively

_____

[6] Vaughn's hearing testimony also does not render his entire affidavit non-credible, even if it conflicts with the parts of his affidavit concerning the final, accepted plea offer. Where a witness offers false testimony, the finder of fact may, or may not, disregard the rest of his testimony. *Cf. Lambert v. Blackwell*, 387 F.3d 210, 256 (3d Cir. 2004) (endorsing "falsus in uno" jury charge). Put differently, disregarding Vaughn's entire affidavit requires a credibility determination, but the court must accept the truth of Vaughn's allegations in determining whether to hold an evidentiary hearing.

[7] The District Court also referred to our decision in *United States v. Shedrick*, 493 F.3d 292, 300 (3d Cir. 2007) which held that "any erroneous sentencing information allegedly provided by defense counsel was corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [defendant's] potential sentence." For the same reason, *Shedrick* is immaterial here. Vaughn had already turned down the 60-month offer when the later plea hearing was held.

resolve what advice Sluzis gave Vaughn, suggesting that an evidentiary hearing should have been held.

In addition, the District Court did not address the prejudice prong of Vaughn's ineffective assistance claim, as it concluded that there was no deficient performance. In this context, to show prejudice, a defendant must show a reasonable probability that he would have accepted the favorable offer but for the ineffective advice of his counsel, that the district court would have accepted the plea, and that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164. It is clear that Vaughn's ultimate 72-month sentence was more severe than the 60-month offer he rejected: one element of the three-part definition of prejudice under *Lafler*. The District Court did not address the other aspects of prejudice, namely whether there is a reasonable probability that both Vaughn and the Court would have accepted the 60-month offer. Accordingly, we will remand to the District Court for it to provide a prejudice analysis in the first instance.

## IV. CONCLUSION

Vaughn has alleged that Sluzis's performance was deficient for failing to adequately communicate with him about the 60-month offer, and the record does not conclusively resolve the relevant factual disputes on this issue. We therefore remand to the District Court to hold an evidentiary hearing to determine the advice Sluzis provided, whether it was deficient, and if it was, whether Vaughn can show prejudice as set forth in

11

*Lafler*.  We affirm the District Court's judgment concerning the application of four sentencing enhancements.