PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-3670

_____

RANDALL SHOTTS,

Appellant

v.

JOHN WETZEL, Secretary PA Doc;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA;
THE DISTRICT ATTORNEY OF THE COUNTY OF
WESTMORELAND


_____


Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-00599)
District Judge: Honorable Robert C. Mitchell

_____


Argued June 10, 2013

Before:  McKEE, Chief Judge,
AMBRO, and NYGAARD, Circuit Judges

(Opinion filed July 31, 2013)

Diana Stavroulakis, Esquire  (**Argued**)
262 Elm Court
Pittsburgh, PA  15237

      Counsel for Appellant

James T. Lazar, Esquire  (**Argued**)
John W. Peck, Esquire
Westmoreland County Office of District Attorney
2 North Main Street, Suite 206
Greensburg, PA  15601

      Counsel for Appellees

_____

OPINION  OF  THE  COURT
_____

AMBRO, <u>Circuit Judge</u>

In 2001, Randall Keith Shotts was sentenced to 30½ to 133 years' imprisonment in Westmoreland County, Pennsylvania.  Following a lengthy state collateral review process, during which Shotts was appointed five different counsel, he filed this petition for *habeas corpus*.  It alleges that his first attorney rendered ineffective assistance during plea negotiations, his guilty plea, and sentencing.  The District Court dismissed Shotts' claim as procedurally defaulted.

We disagree. The Pennsylvania Superior Court's determination that Shotts' claim was defaulted because he failed to raise it when first represented by new counsel was what we term an exorbitant application of an otherwise independent and adequate state rule. As such, it cannot bar federal review of Shotts' claim.

However, on the merits Shotts comes up short, as he has not demonstrated ineffective assistance of counsel. We thus affirm the District Court's judgment denying Shotts' petition.

## I.     Factual and Procedural History

### A.     Conviction and Sentencing

In 1999, the Westmoreland County District Attorney charged Shotts with offenses arising from a string of burglaries. While in jail following his arrest, Shotts offered to assist the District Attorney's office in an investigation into corruption at the Westmoreland County prison. In exchange for his assistance, the District Attorney's office helped secure Shotts' release on bail. Once released, Shotts engaged in another spree of crimes, and additional charges were filed in 2000. Ultimately, he was charged under twelve separate informations for offenses including burglary, theft, criminal mischief, criminal conspiracy, receiving stolen property, passing bad checks, criminal trespass, aggravated assault, simple assault, reckless endangerment of another person, and driving under the influence of alcohol. (Shotts was also charged with probation violations in three earlier cases, but no additional sentence was added for these violations.)

Attorney Brian Aston represented Shotts in connection with all of the charges from the time of Shotts' preliminary hearing through his sentencing. Because Shotts had made

3

substantial confessions to the police, he and Aston agreed that the case should not go to trial, and Aston pursued a plea deal with the Commonwealth. He apparently did not request discovery of police records or copies of Shotts' statements to the police.

The Commonwealth offered Aston a plea deal that would have resulted in a sentence of ten to twenty years' imprisonment. On hearing this, Judge Richard E. McCormick, Jr., who was presiding over the case, commented that the offered sentence seemed high, given Shotts' assistance with the prison corruption investigation. Aston reported the offer and the Judge's statement to Shotts. He rejected the plea deal and entered a general guilty plea without an agreement with the Commonwealth. In a plea colloquy before the Court, Shotts confirmed that his lawyer had explained all of the charges and all of the maximum sentences, that he was pleading without an agreement with the Commonwealth, and that the Court could impose "the various sentences upon these general pleas." App. at 127–28. Sentencing was delayed to allow for a presentence investigation report and for Shotts to present evidence of his participation in the corruption investigation. As to the latter, Judge McCormick told the parties that he knew about Shotts' assistance, but needed evidence to consider that as a factor for sentencing purposes.

Despite hearing evidence of Shotts' cooperation in the corruption investigation and notwithstanding his earlier statement that ten to twenty years' imprisonment seemed high, Judge McCormick sentenced Shotts to an aggregate 30½ to 133 years' imprisonment. This disparity resulted in part from the Judge's limited information about Shotts' participation in the corruption investigation at the time of his earlier statement and in part because the Judge meted out sentences for each information separately without calculating

4

the aggregate sentence he was imposing. Having doled out sentences for each offense, he explained: "Frankly, it's going to take a calculator for somebody to sit down now and calculate up the total amount of years consecutively [imposed]," and reported that "the clerk will have it . . . at some point in time today." App. at 199. Judge McCormick then discussed the factors that justified the sentence. He described Shotts' lengthy criminal history, his drug abuse, his participation in the prison investigation, and his substantial criminal activity after his release on bail. Shotts filed a motion for reconsideration,[1] which the Court denied except to change one sentence from one to two years' imprisonment to nine to eighteen months. This change had no effect on Shotts' overall time of imprisonment because that sentence ran concurrent to other sentences imposed.

At the resentencing hearing, Aston informed the Court that Shotts wished to file a direct appeal and make a claim of ineffective assistance of counsel against him. Aston was permitted to withdraw, and the Court informed Shotts that new counsel would be appointed. The Court appointed Leslie Uncapher. She never learned about the appointment, as she had withdrawn her name from availability for court appointment prior to being assigned to Shotts' case. Shotts'

---

[1] For reasons unexplained in the record, this reconsideration motion omitted three of Shotts' twelve cases. Because those convictions were not raised in the resentencing motion, the time to file a state collateral challenge to those convictions expired earlier than the others, and Shotts' challenges were dismissed by the Pennsylvania Superior Court as procedurally defaulted. Shotts does not contest before us the District Court's holding that his challenge to the conviction and sentence in those cases was procedurally defaulted in state court, and thus federal review is unavailable.

deadline to file a direct appeal expired on August 16, 2001, without an appeal being filed. In September 2001, the order appointing Uncapher was vacated and James Michael was appointed counsel. Although Michael was instructed to file a direct appeal, he took no action on the case.

## B.    Shotts' Collateral Challenge

In July 2002, Shotts filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act ("PCRA"). He claimed seventeen errors, including that both Aston and Michael rendered ineffective assistance of counsel. Due to a series of hearings and appeals on issues of timeliness, Shotts' PCRA claim was not heard on the merits by a PCRA Court until 2007. During that time, three additional counsel—Rachel Morocco, Sharon Wigle, and Patricia Elliot—were appointed to represent Shotts. Morocco and Elliot filed amended PCRA petitions on Shotts' behalf.

All of Shotts' PCRA petitions raised a claim of ineffectiveness against Aston. None of the petitions included a claim against Uncapher. Only Shotts, in his *pro se* petition, raised a claim against Michael.

On April 18, 2007, Judge Rita Donovan Hathaway, presiding at the "PCRA Court," held a hearing to consider Shotts' ineffectiveness claim against Aston. He and Shotts both testified. Crediting Aston's testimony and finding Shotts' testimony not credible, Judge Hathaway found that Shotts' plea was knowing, intelligent, and voluntary, and that Aston provided effective representation as counsel in his advice to Shotts before and during the plea and sentencing. She thus denied all PCRA relief.

On appeal to the Pennsylvania Superior Court, Shotts argued that the PCRA Court erred. Specifically, he claimed

6

that Aston failed (1) to obtain any discovery prior to the plea, (2) to advise Shotts properly of the possible range of sentences, (3) by wrongly encouraging Shotts to enter a general guilty plea, and (4) not to object to the filing of separate criminal informations.

The Superior Court affirmed the denial of relief, but on a different ground. It held that Shotts' claim against Aston was defaulted. Under *Commonwealth v. Hubbard*, 372 A.2d 687 (Pa. 1977), a petitioner waives an ineffectiveness claim if it is not raised by the first counsel who represents him after the allegedly ineffective counsel. We call this the *"Hubbard* rule." It was violated here because counsel following Aston—technically Uncapher, but in practical effect Michael—did not raise any claim of Aston's ineffectiveness.

Even if subsequent counsel does not raise an effectiveness claim, under *Hubbard* a later counsel may still raise the claim by "layering" ineffectiveness claims against counsel. *See Commonwealth v. Grant*, 813 A.2d 726, 733 (Pa. 2002) ("In the aftermath of *Hubbard*, the only way to consider claims related to trial counsel's ineffectiveness that were not raised on direct appeal by new counsel was to plead and prove the additional claim of appellate counsel's ineffectiveness, i.e., a layered claim of ineffectiveness."). Shotts could have gotten at the ineffectiveness of Aston by claiming that each successive attorney was ineffective for failing to challenge the prior attorney's failure to raise the claim (*i.e.*, Uncapher was ineffective for not raising Aston's ineffectiveness, Michael was ineffective for not raising Uncapher's ineffectiveness, *etc*.). *See Commonwealth v. McGill*, 832 A.2d 1014, 1021–22 (Pa. 2003) (explaining layered claims). The Superior Court held that Shotts did not preserve this claim. "[He] did *not* include a challenge to counsel's ineffectiveness for failing to file either a direct appeal or a motion to withdraw his plea in *any* of his *pro se* or

7

amended PCRA petitions." App. at 79 (emphases in original).

On that alternate and procedural basis, the Superior Court concluded that it was "constrained to affirm the order of the trial court dismissing [Shotts'] petition for PCRA relief," and that "[his] only recourse appears to be in the federal court system." *Id.* at 79–80. Shotts' petition for allowance of appeal was denied by the Pennsylvania Supreme Court.

## C. Shotts' *Habeas* Petition

Shotts filed a *pro se habeas* claim in federal court. He alleged constitutional violations that included ineffective assistance of his plea counsel—a deprivation of his Sixth Amendment right.[2] Magistrate Judge Mitchell dismissed Shotts' petition. He determined that Shotts' claim of ineffectiveness was barred as procedurally defaulted due to the *Hubbard* rule, an independent and adequate state procedural rule. Shotts filed a timely notice of appeal and request for certificate of appealability.

---

[2] Shotts also alleged three additional errors: (1) failure of the trial court to give him proper credit for time served; (2) an illegal sentence for lack of jurisdiction; and (3) a violation of his Fifth Amendment right to due process. Judge Mitchell determined that these claims were never presented to a state court, and thus federal review was barred. 28 U.S.C. § 2254(b)(1)(A). Shotts does not contest this default, and has not demonstrated cause or prejudice, or a miscarriage of justice, sufficient to excuse this default. *Cristin v. Brennan*, 281 F.3d 404, 414 (3d Cir. 2002). We did not grant a certificate of appealability on these claims and do not consider them here.

8

We granted a certificate of appealability on whether the Superior Court's determination that Shotts waived his ineffective assistance of counsel claim against Aston was an "exorbitant application" of the *Hubbard* rule, and, if we could consider the claim, whether Shotts was denied effective assistance of counsel based on allegations that Aston failed to conduct any pre-plea discovery and did not advise Shotts of the maximum amount of prison time he could receive.

## II.    Procedural Default

The adequacy of a state procedural bar is a question of federal law, which we review *de novo*.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002); *Holloway v. Horn*, 355 F.3d 707, 713 (3d Cir. 2004).

### A.    Permissibility of Federal Review

Generally, federal courts will not consider an issue raised in a *habeas* petition if it was rejected by a state court and "the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Kemna*, 534 U.S. at 375 (alterations and emphasis omitted).  We look to the face of the opinion to determine if the state court "clearly and expressly" states that it relied on a state ground separate from the federal issues.  *See Munchinski v. Wilson*, 694 F.3d 308, 333 (3d Cir. 2012) (quoting *Coleman v. Thompson*, 501 U.S. 722, 733 (1991)).  A state ground is "adequate" if it is "firmly established and regularly followed."  *Walker v. Martin*, ___ U.S. ___, 131 S. Ct. 1120, 1127 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)); *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012).

To repeat, the Pennsylvania Superior Court dismissed Shotts' ineffectiveness claim because of the *Hubbard* rule.

The parties agree that it is independent of the federal constitutional issue of ineffectiveness of counsel and, at the time it was applied, was firmly established and regularly followed by Pennsylvania courts. *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 1917 (2013) ("[A] conviction that rests upon a defendant's state law 'procedural default' (for example, the defendant's failure to raise a claim of error at the time or in the place that state law requires) . . . normally rests upon an independent and adequate state ground." (quotation omitted)). *Hubbard* was overturned by the Pennsylvania Supreme Court in *Grant*, 813 A.2d at 738, but *Hubbard* continued to apply to cases—like Shotts'— "currently pending on collateral review." *Id*. at 739 n.16. Under *Grant*, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Id*. at 738.

## B.     The Exorbitant Application Exception

The Supreme Court, however, recognized a narrow exception to this procedural bar to federal review in *Lee v. Kemna*, 534 U.S. 362 (2002). In "exceptional cases . . . exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal rule." *Id*. at 376. In *Lee*, a criminal defendant moved for a delay of his trial when he discovered that his three alibi witnesses could not be found in the courthouse though they had been present earlier in the day. *Id*. at 369. His motion failed, as the court cited its limited availability and the appearance that the witnesses had abandoned Lee. *Id*. at 370. Lee did not present any defense witnesses and was convicted. On collateral attack, the Missouri Court of Appeals affirmed the denial of his petition for relief. *Id*. at 372. It held that Lee's challenge was defaulted because he did not comply with a state rule that motions for delay in trial must be made in writing and accompanied by an affidavit. *Id*. at 372–73. A

10

federal district court and court of appeals held that this was an adequate and independent state law ground barring federal review. *Id*. at 374. The Supreme Court reversed, holding that adherence to this technical requirement was an exorbitant application of Missouri's rule. *Id*. at 376.

"Three considerations, in combination," led the Court "to conclude that this case [fell] within the small category of cases in which [otherwise adequate] asserted state grounds are inadequate to block adjudication of a federal claim." *Id*. at 381. First, the procedural requirement was not invoked at Lee's trial, and his perfect compliance with the rule would not have altered the outcome. *Id*. The trial court denied the continuance for scheduling reasons. Second, there was no case law that directed flawless compliance with the rule in the unique circumstances of his case. *Id*. at 382. Third, "and most important," *id*., Lee substantially complied with the "essential requirements" of the rule, which were intended to provide information to the trial court and opposing party. *Id*. at 385. That Lee's prior written motions related to these witnesses, and he had a clear trial strategy to rely on their alibi testimony, notified the trial court and opposing counsel of all that was needed to rule on the motion.

Thus, "[e]ven if a state rule itself is adequate, the 'exorbitant application' of the rule may in exceptional cases render the state ground inadequate to erect a procedural bar." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 657 (3d Cir. 2011) (quoting *Lee*, 534 U.S. at 376). As the procedural default bar is grounded in a policy of comity and federalism that gives deference to a state's resolution of its criminal trials, if the state rule applied serves "no perceivable state interest," it need not bar our review. *Lee*, 534 U.S. at 378.

The three considerations relied on by the *Lee* Court are not so much a test as they are "guideposts," *Cotto v. Herbert*,

11

331 F.3d 217, 240 (2d Cir. 2003), that are helpful in "evaluat[ing] the state interest in a procedural rule against the circumstances of a particular case." *Lee*, 534 U.S. at 381; *see also Monroe v. Kuhlman*, 433 F.3d 236 (2d Cir. 2006) (deeming application of contemporaneous objection rule as exorbitant even though the first and third factors did not favor the petitioner). The *Lee* considerations are strongly tied to the facts of that case, where the alleged default occurred during a criminal trial. *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008) (noting that the *Lee* guideposts are "obviously rooted in the context of procedural defaults at trial, and are so formulated"). Here, where the default occurred when Shotts failed to raise a claim on appeal, we consider the *Lee* factors as helpful guidance but also consider the overall relevant circumstances in our case.

As did the Supreme Court in *Lee*, we believe that a number of exceptional considerations, in combination, lead us to conclude that the Superior Court's application of the *Hubbard* rule in this case was exorbitant. Over the course of nine years and five appointed counsel, Shotts consistently raised his claim that Aston provided ineffective assistance of counsel. The PCRA Court considered Shotts' claim on the merits and held an evidentiary hearing to consider Aston's representation. Shotts had no opportunity to correct the procedural default spawned by *Hubbard* before the Superior Court *sua sponte* invoked it to dismiss his PCRA petition. Moreover, because Shotts' claim reached the Superior Court on the merits, there is no state interest in applying the procedural rule at that point.

Shotts first raised his allegation that Aston provided ineffective assistance of counsel at his resentencing hearing. Indeed, Shotts' desire to pursue this claim was the reason Aston was permitted to withdraw as counsel. The Court informed Shotts that new counsel would be appointed so that

12

he could pursue this claim. However, Uncapher—the first new counsel appointed to Shotts—had removed her name from the court appointment list and was never informed about the assignment. It is not clear that Shotts even knew of Uncapher's appointment. By the time the Court vacated her appointment, Shotts' time to file a direct appeal had expired. Michael—Shotts' next attorney—appointed after his time to file a direct appeal had expired, also took no efforts on Shotts' behalf despite his request, both before the Court and in letters he sent to Michael, to file an appeal alleging Aston's ineffectiveness.

Shotts then raised his claim challenging Aston's representation in his *pro se* PCRA petition. At the moment he made this claim in 2002, it was technically defaulted under *Hubbard* because he had not challenged Aston's representation when he was represented by Uncapher, or Uncapher's representation when he was represented by Michael. This default went unmentioned by the Commonwealth or the PCRA Court until the Superior Court's decision in 2010 when it ended Shotts' petition for collateral relief because of this procedural requirement.

The first factor the *Lee* Court considered was that the trial court ruled on the merits of Lee's motion to postpone his trial, not the procedural bar later invoked by the state appellate court. In Shotts' case, as in *Lee*, "perfect compliance with the state rule" would not have changed the outcome during the earlier state proceeding. *Cotto*, 331 F.3d at 240; *see Lee*, 534 U.S. at 381. The PCRA Court treated his claim as properly raised, and it considered the merits of the ineffectiveness claim. It held an evidentiary hearing (where Aston and Shotts both testified), and issued an opinion and judgment. If Shotts had completely complied with the *Hubbard* rule, the PCRA Court would have taken the exact course.

13

The Supreme Court also considered in *Lee* whether a published Missouri state court decision "direct[ed] flawless compliance" with the state rule at issue. *Id.* at 382. Beyond noting the "sudden [and] unanticipated" events that arose during Lee's trial, the Court pointed out that the rule offered the chance to cure any defect, yet Lee was not given that opportunity. *Id.* "If either prosecutor or judge considered supplementation of Lee's motion necessary, they likely would have alerted the defense at the appropriate time, and Lee would have had an opportunity to perfect his plea." *Id.* at 380.

The same is true for Shotts. Under the Pennsylvania Rules of Criminal Procedure, a "defective" PCRA petition can be amended. Pa. R. Crim. P. Rule 905. "This rule indicates the desire of this Court to provide PCRA petitioners with a legitimate opportunity to present their claims to the PCRA court in a manner sufficient to avoid dismissal due to a correctable defect in claim pleading or presentation." *Commonwealth v. McGill*, 832 A.2d 1014, 1024 (Pa. 2003). Shotts could have reached Aston's ineffectiveness by layering ineffectiveness claims against his later counsel who failed to raise the issue properly. *Id.* at 1024 (citing Rule 905 as applicable in cases "where the petitioner has failed to preserve, by pleading and/or presenting, a layered ineffectiveness claim in a manner sufficient to warrant merits review"). But no one alerted Shotts during the years in litigation of this case—which included three PCRA counsel and two amended PCRA petitions—so he could perfect his ineffectiveness claim. When the Superior Court *sua sponte* raised the procedural default, he did not have the opportunity to cure.

Moreover, Shotts arguably attempted to raise a layered claim in his *pro se* petition. As noted, the Pennsylvania Superior Court stated that he "did *not* include a challenge to

14

counsel's ineffectiveness for failing to file either a direct appeal or a motion to withdraw his plea in *any* of his *pro se* or amended PCRA petitions." App. at 79 (emphases in original). But Shotts' listed Michael's ineffectiveness in his *pro se* PCRA petition. *See id.* at 16 ("Atty James Michael has provided ineffective counsel since 2000 [sic], when he was appointed."); *id.* at 17 ("James Michael – Did nothing for me, was completely useless as an attorney."). At the time, the Pennsylvania Courts had not defined the requirements of a layered ineffectiveness claim. *Commonwealth v. Ligons*, 971 A.2d 1125, 1139 (Pa. 2009) ("[O]ur Court in *McGill* acknowledged that the manner of properly layering a claim of ineffective assistance of counsel had been unclear and clarified the procedure for presenting layered claims."). If the Superior Court meant that Shotts' *pro se* layered claim was not properly pled, we would deem that to be an exorbitant application of *Hubbard*'s layering requirement. It would "inject an Alice-in-Wonderland quality into the proceedings," *Lee*, 534 U.S. at 383, to require a *pro se* litigant to know how properly to layer an ineffectiveness claim when the highest court in the Commonwealth was still struggling with the issue.

We recognize that the *Hubbard* rule—prior to being overturned—was "unbending," *Grant*, 813 A.2d at 733, a factor that weighs against Shotts. But we also consider the unusual "circumstances presented," *Cotto*, 331 F.3d at 240, that in this case include what the Commonwealth deems an "admittedly horrendous history." Appellee Br. at 11. Having been sentenced to what could effectively be a lifetime of imprisonment, Shotts understood counsel would be appointed to pursue a direct appeal and claim against Aston. Neither Uncapher or Michael filed a direct appeal. The issue was raised again in Shotts' PCRA petition. Years of delay followed, which included failures of multiple counsel to file timely motions and briefs. The Commonwealth has presented

15

no case, nor has our research revealed one, where a Pennsylvania court relied on a default under *Hubbard* in similar circumstances.

Turning to the third, and "most important," *Lee* consideration, 534 U.S. at 382, we discern no state interest served by applying the *Hubbard* rule in this case. The Commonwealth argues that the rule serves an important state interest in the finality of judgments and preservation of judicial resources. How state interests were promoted here evades us. The rule's "essential requirement" that the claim be raised at the earliest possible time was met by Shotts' request at resentencing and continued pursuit of this claim during the PCRA process. *Id.* at 385. His ineffectiveness claim—and desire to challenge the finality of his sentence on that ground—was clear from the time of his resentencing. It was litigated for years. Ultimately, the facts at issue were developed in the PCRA Court and presented to the Superior Court for appellate review. Dismissing at the Superior Court does not "promote judicial economy [or] the orderly administration of the appellate process." *Hubbard*, 372 A.2d at 695 n.6 (quotation omitted). "Where it is inescapable that the defendant sought to invoke the substance of his federal right, the asserted state-law defect in form must be more evident than it is here." *Lee*, 534 U.S. at 385 (quotation omitted).

The combination of these factors "lead[s] us to question the applicability of this body" of state law. *Whitley v. Ercole*, 642 F.3d 278, 290 (2d Cir. 2011). We believe that the Superior Court's application of the *Hubbard* rule in this

16

case was exorbitant, and does not bar federal review of Shotts' claimed ineffectiveness of plea counsel.[3]

## IV. Ineffectiveness of Counsel

We certified for appeal two aspects of Shotts' ineffectiveness claim—(1) Aston's alleged failure to conduct an investigation or discovery prior to Shotts' guilty plea, and (2) his alleged failure to advise Shotts of the maximum sentence available.

### A. Standard of Review

Decisions on the merits by a state court are afforded deference under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. We will reverse only if the court's determinations "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). If a state court does not review a claim on the merits, we review the claim *de novo*. *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012).

---

[3] Federal courts can also review procedurally defaulted claims if the petitioner can show "cause for the default and prejudice from a violation of federal law." *Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911, 1917 (2013) (quotation omitted); *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1318–19 (2012). Because of the path taken to resolve this case, we do not need to consider this other exception, for which we did not issue a certificate of appealability or have the benefit of briefing.

The parties agree that we should apply AEDPA deference to Shotts' allegation that Aston failed to inform him of the possible sentences because the PCRA Court considered this claim and issued a ruling on the merits. Appellant Br. at 51; Appellee Br. at 16. The Commonwealth argues for similar deference in Shotts' allegation that Aston was ineffective for failing to conduct discovery because the PCRA Court discussed the merits of this claim, though ultimately ruling it was waived. App. at 69 n.5. Deference is not owed in this case, however, because there was no decision on the merits.

"For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The PCRA Court's decision did not finally resolve Shotts' claim because the later Superior Court decision "stripped the PCRA court's substantive determination . . . of preclusive effect." *Id*. The appellate decision is procedure-based, and thus does not reach the merits. *Id.* With the PCRA Court's ruling stripped of preclusive value, "AEDPA deference is not due." *Id*. We review Shotts' claim *de novo*. In this case, however, the standard of review makes little difference. Under either standard, Shotts has not demonstrated ineffective assistance of counsel.

### B.     Claims Against Plea Counsel

To establish ineffective assistance of counsel, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111 (2009); *Strickland v. Washington*, 466 U.S. 668 (1984). Performance is deficient if counsel's efforts "fell below an

18

objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 687–89).

To demonstrate prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see Wright v. Van Patten*, 552 U.S. 120, 124 (2008). At the plea stage, prejudice "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

### 1. Alleged Failure to Obtain Discovery

Shotts alleges that Aston was ineffective for failing to conduct discovery—including obtaining police reports and records—prior to advising his client to plead guilty. A counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . . [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91.

We cannot conclude that failing to obtain discovery in this context fell below an objective standard of

19

reasonableness. Aston made a reasonable strategic choice in light of Shotts' "pretty substantial confession" and his wish to avoid trial. App. at 235. Aston's preliminary investigation governed his choice to pursue a plea agreement and then to try to obtain a favorable sentence following a general guilty plea. The facts here do not demonstrate deficient performance.

As for prejudice, no allegation exists that evidence in these records would have aided plea negotiations or reduced the charges or sentence Shotts faced. His only allegation is that Aston would have been better prepared to advise him during the plea and sentencing if Aston had obtained discovery. That fails to show "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 2. Alleged Failure to Advise About Sentencing

Shotts contends also that Aston was ineffective because he failed to inform Shotts of the maximum sentence he could receive. No one disputes that Aston told Shotts the maximum sentence available for each offense, but did not calculate the total possible sentence available if the Court's sentence for each count ran consecutively. Although Aston never provided a total sentence that Shotts could face in the worst-case scenario, he told Shotts that "if everything runs consecutive this is going to get to be a very large number very quick." App. at 248, 247, 264. Shotts knew that the Judge had discretion to impose various sentences and that he had no sentencing agreement with the Commonwealth when he pled guilty. Aston and Shotts expected the sentence to be far lower than Shotts received, but Aston did not make any promises to Shotts about his sentence.

20

In the context of a guilty plea, counsel is required to give a defendant information sufficient "to make a reasonably informed decision whether to accept a plea offer." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). In effect, Shotts asks us to hold that his decision is only reasonably informed if counsel has provided an exact number or close estimate of the maximum sentencing exposure. We decline to do so. Aston informed Shotts of the maximum sentence for each offense and that the aggregate sentence could increase quickly if the Judge chose to run those sentences consecutively—something Shotts understood the Judge had the discretion to do. Aston provided sufficient information for Shotts to make a reasonably informed decision to plead guilty.

Even if Shotts could show deficient performance, he could not demonstrate prejudice. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, ___ U.S.___, 132 S. Ct. 1376, 1384 (2012). If a defendant rejects a plea, he must show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea" and the resulting sentence would have been lower. *Id.* at 1391; *see United States v. Booth*, 432 F.3d 542, 546–47 (3d Cir. 2005); *Baker v. Barbo*, 177 F.3d 149, 154–55 (3d Cir. 1999).

Shotts asserts he was prejudiced because he refused the ten-to-twenty-year plea deal and entered a constitutionally invalid plea on the basis of Aston's deficient performance. We disagree. Shotts believed that the plea offer was too high and that he would receive a lower sentence. In light of his prior convictions, as well as Judge McCormick's statement that the plea offer of ten to twenty years seemed high, this may have been a reasonable expectation. Shotts knew the possibilities when he rejected the plea deal. We cannot now

21

say there is a reasonable probability he would have taken the plea deal if Aston had acted as Shotts suggests.[4]

*　　*　　*　　*　　*

In the exceptional circumstances of this case, the Pennsylvania Superior Court's application of the *Hubbard* rule was exorbitant and does not bar federal review. When we consider Shotts' claim on the merits, however, we conclude that he has not demonstrated Aston's ineffectiveness. Thus we affirm the District Court's judgment denying Shotts' petition for *habeas corpus*.

---

[4] We pause to note our concern with the sentencing judge's actions in this case—both offering an opinion on the plea deal and imposing a sentence without calculating the aggregate incarceration that resulted (unless the pre-sentence calculation could only result in a sentence of life imprisonment, not necessarily the case here). Nonetheless, given the posture of this case and the limitations embedded in *habeas* review of a state court judgment, these are not grounds for relief. Aston's performance was not deficient because he failed to account for the sentencing judge's unconventional behavior.