**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3209-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAQUAN L. LEE, a/k/a JAQUAN
JULIUS LEE, JACQUAN LEE,
JAQUEAN J. LEE, JAKWAN J.
LEE, JAKWAN LARRY LEE,
and JAKWAM L. LEE,

    Defendant-Appellant.

_____

Submitted June 1, 2020 – Decided July 21,2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 07-12-1019.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the briefs).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Michele C. Buckley, Special

Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

Defendant Jaquan Lee appeals from the trial court's order denying his petition for post-conviction relief after an evidentiary hearing. Lee collaterally challenges his conviction of multiple counts of first-degree robbery and weapons offenses. He was ultimately sentenced, after remand, to an aggregate thirty-five-year term, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. Narrowing his claim of ineffective assistance of counsel on appeal, he contends that his trial counsel, as a result of her inexperience, (1) failed to adequately explain the ramifications of a mid-trial disclosure that incriminating DNA, which a report previously attributed to Lee's co-defendant, Tony Lee Canty, actually belonged to Lee, and (2) failed to adequately counsel Lee about the plea offer that the State resurrected mid-trial after the DNA mix-up came to light.[1] We affirm.

---

[1] Defendant does not address the trial court's rejection of his claims that his trial attorney was ineffective in other aspects of her defense. Therefore, we deem those claims waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (holding that an issue not briefed on appeal is deemed waived).

I.

We assume the reader's familiarity with the facts underlying Lee's conviction, which we reviewed in our opinion on his direct appeal. See State v. Lee, No. A-2842-10 (App. Div. August 12, 2013). In summary, the State presented evidence that one night, Lee, Canty, and a third person robbed at gunpoint three groups of persons. One of Lee's former girlfriends testified she drove Lee and the others from one robbery to another. A second former girlfriend testified she loaned Lee the car, which matched the victims' description, including its license plate number. Lee was arrested attempting to flee from the stopped car when the police approached. Inside the car were various items taken in the robberies along with items that separately linked Lee to the vehicle. Lee matched the physical description the victims gave, including wearing a distinctive Detroit Lions cap. One of the victims identified Lee in court.

On top of this evidence, the State disclosed before trial that Canty's DNA was found on one of the stolen cellphones and a Detroit Lions jacket that police seized from the vehicle. However, as the State neared the end of its case, it came to light that, as a result of a transposed number, the State's DNA report

A-3209-17T4

had mistakenly identified Canty as the DNA contributor. In fact, the DNA on the items belonged to Lee.[2]

As a result of this late disclosure, Lee's trial counsel asked the court to exclude the DNA evidence, or grant a mistrial. She argued it prejudiced her defense, although she did not explain what she would have done differently. The court stated there were "no grounds for a mistrial." After an extensive colloquy with counsel, the court permitted the State's DNA expert to testify that buccal samples were taken from both defendants; the State tested items that were likely to yield good DNA samples; and Canty was excluded from the DNA samples taken from the phone and jacket found in the vehicle. The expert was silent on whether the DNA from the samples matched Lee's DNA. Lee's trial attorney did not cross-examine the expert. Although the parties contended before the PCR court that the attorneys entered into a stipulation regarding the DNA, we have found no evidence in the trial transcript of such a stipulation, and neither party identified the point in the trial when the alleged stipulation was presented to the jury.

The parties agree that in the midst of discussions about how to handle the DNA mix-up, the assistant prosecutor advised Lee's trial attorney that he would

_____

[2] We did not address the DNA evidence in our previous opinion.

permit Lee to accept the State's pre-trial plea offer. As before, the State offered to recommend a ten-year sentence, subject to NERA, in return for Lee's guilty plea and testimony against Canty, if needed. How counsel communicated the offer and how she responded to the DNA mix-up is the focus of Lee's remaining claims of ineffective assistance.

In brief, Lee alleged his attorney never informed him the plea offer was back on the table; by contrast, his trial attorney asserted she told him, and he rejected it. Although Lee and his attorney presented different versions of what they said in discussions following the disclosure, PCR counsel emphasized their point of agreement – that trial counsel was rushed and ineffectively counseled defendant about the DNA mix-up, and the revived plea offer.

In his PCR petition, defendant contended that his trial attorney discussed the DNA development for only several minutes in a hallway off the courtroom, within earshot of two sheriff's officers. He contended he did not understand everything she said to him. He said in his certification that he asked her if she could ask the State to revive its pre-trial plea offer of a ten-year term, subject to NERA. He said, to his "knowledge she never did because she never discussed it with me."

A-3209-17T4

At the evidentiary hearing, Lee amplified his version of events. He realized the DNA mix-up damaged his case. He could no longer argue there was no forensic evidence tying him to the stolen items; and he feared jurors might speculate that his DNA was found on the items, because only Canty would explicitly be excluded. Nonetheless, he contended he did not understand everything his counsel told him in the hallway. He said he did not "recall" that she conveyed the revived plea offer during their discussion. He clarified that it was only after they returned to counsel table that he asked her, "what's up with the State's plea offer?" He admitted he did not explicitly say he wanted to accept it, but he asserted that his inquiry implied that he would accept it. He said his attorney just "blew [him] off." He insisted he would have accepted the plea offer, including testifying against Canty, if necessary. He asserted that he declined the pre-trial plea offer because of the lack of forensic evidence against him, not a disinclination to testify against Canty.

Lee's trial attorney supported his claim of ineffective assistance by contending that she needed more time to explain adequately the significance of the DNA mix-up, and the reasons why she advised him to accept the revived plea offer. Although she had been in practice for seventeen years, and second-chaired several criminal cases as an associate of a respected attorney, she never

tried a case solo, let alone a first-degree criminal case. She said she was given one week to prepare for trial, and, as a result of her inexperience, she did not assert herself sufficiently. She claimed she did not present a vigorous argument in support of a mistrial, and she did not insist on an adjournment, so she could have a fulsome opportunity to discuss the developments in the case, including the revived plea offer.

Regarding her hallway conference with Lee, she said, "I am sure that he could not totally understand everything that I was explaining to him or the ramifications of what I was explaining to him." She blamed herself for discussing such an important matter under time pressure, in a hallway, within possible earshot of sheriff's officers.

She testified that before trial, she and Lee discussed at length the State's plea offer and she urged him to accept it, but he declined. At a pre-trial conference, the trial judge informed Lee that if convicted he could face what would be tantamount to a life sentence. Trial counsel recalled telling Lee that she did not think there was a great likelihood of a consecutive sentence, and that Lee's exposure was likely in the 20-25 years range. She acknowledged she was wrong.

However, the DNA mix-up weakened the defense and strengthened the argument for accepting the State's revived plea offer. She testified that she should have taken more time to explain to Lee that they lost a major theme of the defense – the absence of forensic evidence incriminating him and the presence of evidence incriminating Canty. She said she should have counseled him, with regard to the plea offer, that he needed to consider what was best for himself. However, she insisted that she conveyed the plea offer to Lee in the discussion in the hallway, and he rejected it. She also said she ineffectively argued for the mistrial, and should have rejected the alleged stipulation regarding the DNA evidence.[3]

In PCR counsel's summation, she did not rest the petition for relief on the claim that trial counsel failed to disclose the revived plea offer. Rather, she argued that the circumstances surrounding the discussion led to confusion, and trial counsel was obliged to have a more fulsome discussion of the ramifications of the DNA mix-up, and the pros and cons of the revived plea offer. When PCR counsel recalled Lee's assertion that he was never told of the revived plea offer,

---

[3] As she recalled the stipulation, it permitted discussion that the DNA excluded Canty, "but then [there would be] this wall of silence as to how or in what way" it involved Lee. "[I]t certainly opened the door to a negative inference. I never should have stipulated to it. It was harmful."

the PCR judge interrupted to reject it.  Noting Lee's motive to avoid a thirty-five-year sentence, the court concluded Lee had "no credibility on that point . . . I don't believe him at all."  When the judge asked PCR counsel if she was suggesting that trial counsel was "lying when she . . . [told] . . . him the deals are back on the table," PCR counsel conceded, "I'm not saying she's lying, I'm just saying there was a lot of confusion because of what happened . . . ."

The PCR judge credited the attorney's version of events and rejected Lee's.[4]  The court found that despite trial counsel's assertions of her own

---

[4]  We note that Lee and his trial counsel testified on separate days before different judges.  The first judge fell ill after Lee testified.  The second judge completed the hearing pursuant to Rule 1:12-3(b).  Lee's PCR counsel did not object, nor did she ask the second judge to recall Lee.  See R. 1:12-3(c) (stating that a substituted judge, in order to fairly discharge his judicial duties, "shall make such disposition as the circumstances warrant, . . . in a case tried without a jury, by directing the recall of any witness").  We asked counsel to file supplemental briefs to address whether the trial court was obliged, sua sponte, to recall Lee.  Cf. Fed. R. Civ. P. 63, and Advisory Committee Note to Fed. R. Civ. P. 63 (stating a substitute judge "risk[s] error to determine the credibility of a witness not seen or heard who is available to be recalled").  We appreciate counsel's additional submissions.  We conclude that, whether PCR counsel's failure to request Lee's recall was strategic or an oversight, the court's decision to proceed without recalling Lee does not amount to plain error, particularly under the circumstances of this case.  PCR counsel did not hinge the petition on the judge believing Lee over his trial counsel.  The thrust of PCR counsel's argument was that the plea discussion, assuming it occurred, was constitutionally inadequate.  Therefore, not recalling Lee does not raise a reasonable doubt the PCR court reached a result it "otherwise might not have reached," or denied Lee a "fair [hearing] and a fair decision on the merits."  State v. Macon, 57 N.J. 325, 336, 338 (1971); R. 2:10-2.

9

inadequacies, she provided effective assistance of counsel. He noted that she moved for a mistrial, but the trial judge found no basis for granting one.

The PCR judge also found that Lee received the "opportunity . . . to reconsider the extraordinarily favorable 10-year plea offer that had been given to him prior to trial." The court concluded that extensive discussion of the offer was not needed to explain it to defendant, as it was the same offer that trial counsel had discussed several times before trial, and Lee was "adamant in not taking it." The PCR court noted that the trial "court granted a short recess to allow the defendant to reconsider the exact same plea offer. . . . There was nothing new."

The judge acknowledged trial counsel's testimony that the circumstances prevented a full discussion. But, he found "the opportunity to discuss was a fair and reasonable one and Mr. Lee was adamant in his assertions of innocence and was unwilling to take the renewed 10-year plea offer which occurred in the middle of trial. . . . He made the decision, which he is entitled to, to reject the plea and go forward."

On appeal, Lee presents the following points for our consideration:

POINT I

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-

10

CONVICTION RELIEF BECAUSE TRIAL COUNSEL ADMITTED SHE WAS TOO INEXPERIENCED TO HANDLE HIS TRIAL AND DID NOT SPEND SUFFICIENT TIME EXPLAINING THE DNA ISSUE WITH DEFENDANT.

POINT II

THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE TRIAL COUNSEL ADMITTED SHE WAS INEFFECTIVE REGARDING HER DISCUSSIONS OF THE RE-EXTENDED PLEA OFFER WITH DEFENDANT.

II.

Mindful of the PCR judge's opportunity to hear and see live witnesses, "we will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). We review de novo issues of law. Id. at 540-41. Applying that standard of review, we affirm the PCR court's order.

To prevail on a claim of ineffective assistance of counsel, Lee was obliged to satisfy the two-prong Strickland test by showing: (l) his counsel's performance was deficient, and she made errors that were so egregious she was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different."  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); see also State v. Fritz, 105 N.J. 42, 52 (1987).

The right to effective assistance of counsel extends to the plea bargaining process.  Lafler v. Cooper, 566 U.S. 156, 162 (2012).  "In the context of a guilty plea, counsel is required to give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'"  Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).

"Adequate assistance of an attorney is measured according to whether the counsel has professional skills comparable to other practitioners in the field."  State v. Davis, 116 N.J. 341, 351 (1989).  "'Reasonable competence' does not require the best of attorneys, but certainly not one so ineffective as to make the idea of a fair trial meaningless."  Ibid.  "The test is not whether defense counsel could have done better, but whether he [or she] met the constitutional threshold for effectiveness."  Nash, 212 N.J. at 543.  A defendant must overcome a strong presumption that counsel exercised "reasonable professional judgment."  Strickland, 46 U.S. at 690.  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by

defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Id. at 688-89.

When a defendant claims his attorney's ineffective assistance caused him to reject a plea offer, the defendant must prove that "but for counsel's deficient performance there is a reasonable probability he [or she] and the trial court would have accepted the guilty plea." Lafler, 566 U.S. at 174. A court should not upset a conviction "solely because of [a defendant's] post hoc assertions . . . about how he would have pleaded but for his attorney's deficiencies." Lee v. United States, 582 U.S. ___, ___, 137 S. Ct. 1958, 1967 (2017). Rather, a court must consider "contemporaneous evidence to substantiate a defendant's expressed preferences." Ibid.

Although Lee complains that his trial counsel spent insufficient time explaining the DNA mix-up to him, the evidence reflects that he understood the significance of the mix-up. His claim that he inquired about the plea offer at counsel table reflects that he understood the mix-up was a significant, negative development. Even if one credits his statement that he may not have "understood everything that [his attorney] was explaining to [him]," he understood his defense was weakened. Otherwise, he would not have inquired whether the plea was still a possibility. Although counsel "could have done

better," Nash, 212 N.J. at 543, by requesting and spending additional time to discuss the DNA development at greater length, trial counsel successfully conveyed the import of the development. Thus, we do not conclude trial counsel was ineffective by providing what she views now as a rushed explanation of the DNA mix-up and how she intended to respond.

We also reject the argument that trial counsel was ineffective in reviewing the revived plea offer. As we have noted, the PCR court credited Lee's trial attorney's version of events: she disclosed the revived plea offer during the hallway discussion, and Lee rejected it. We are obliged to defer to the PCR judge's fact-finding. The PCR judge did not observe Lee's demeanor when he testified, because he testified before a different judge. But, the PCR judge, in effect, characterized Lee's testimony as "post hoc assertions" of what he might have done. Furthermore, Lee never flatly denied that counsel raised the plea offer in the hallway conference. He said he did not understand everything trial counsel said in the hallway discussion, and he did not "recall" her mentioning the revived plea offer. And, although he claims he inquired about the plea offer at counsel table, he did not expressly say he wanted to accept it.

As noted, on appeal, Lee does not directly challenge the trial court's finding that trial counsel communicated the plea offer. Had trial counsel failed

to communicate the offer at all, her ineffectiveness would not be open to debate. Missouri v. Frye, 566 U.S. 134, 145 (2012). Rather, Lee argues that his trial counsel was ineffective because she rushed; she did not secure more time; and she did not convey in sufficient depth the reasons why she believed Lee should have accepted the plea agreement.

The PCR court found that a more extensive discussion was not required to satisfy the constitutional right to effective assistance, because Lee understood the pros and cons of the plea offer; he rejected it pre-trial; he understood the DNA development; and he rejected the plea offer mid-trial. Essentially, the PCR court found that trial counsel was not deficient; and Lee suffered no prejudice. We shall not disturb the PCR court's conclusion.

As trial counsel testified, she and Lee reviewed the plea offer during extended discussions before trial. The plea offer that the State revived after the DNA mix-up was the same one Lee had rejected. He was familiar with it; and he was familiar with trial counsel's argument. Although there was an additional factor favoring the plea offer in trial counsel's mind – the DNA mix-up – Lee understood the ramifications of that development, too.

We do not minimize the potential value of a more extensive discussion. A more experienced and assertive attorney may have asked for more time. She

may have gotten some, but that is by no means certain. Trial counsel testified that if she had more time, she would have encouraged Lee to think about what was best for him – implying that testifying against Canty was the main stumbling block. Whether more time might have led Lee to make a different decision is not the test. Nor is the test whether the trial attorney could have done a better job. The question is whether she provided the minimal level of competence required by the Constitution. We shall not disturb the PCR court's determination that she did.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3209-17T4