**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0531-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DONALD B. LINDSEY,

     Defendant-Appellant.

_____

Submitted October 18, 2019 – Decided January 6, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 10-09-2451.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard E. Drucks, Designated Counsel, on the brief).

Jill S. Mayer, Acting Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Donald Lindsey, appeals from the denial of his petition for post-conviction relief (PCR) without an evidentiary hearing. In August 2008, defendant and codefendant, Martin Pierce, engaged in a shootout that resulted in the death of a four-year-old bystander, B.T. The State presented proof at trial that defendant fired the bullet that struck and killed the child. The State argued that defendant's intent to kill Pierce transferred to become an intent to kill B.T., thereby making defendant culpable for the crime of murder. The jury found defendant guilty of the attempted murder of Pierce but acquitted defendant of the purposeful murder of B.T., finding him guilty instead of the lesser offense of passion/provocation manslaughter pursuant to N.J.S.A. 2C:11-4(b)(2). We affirmed defendant's convictions on appeal, rejecting his contentions that the jury was improperly instructed and returned inconsistent verdicts. Defendant is presently serving an aggregate term of twenty-eight years of imprisonment that includes a combined period of parole ineligibility of twenty-four years, six months.

Defendant claims in his PCR petition that his attorney rendered ineffective assistance of counsel both before and during trial. Defendant specifically contends that his counsel provided constitutionally deficient assistance by advising him to reject a plea offer the State tendered before trial that would have

2

capped his sentence at twenty-five years. Defendant also contends that defense counsel forced him to testify and then allowed the jury to see him in shackles while on the witness stand. He further asserts that counsel failed to clarify for the jury, either by requesting an instruction or through argument in summation, how the transferred-intent principle applies to passion/provocation manslaughter under N.J.S.A. 2C:11-4(b)(2).

In a detailed and comprehensive forty-three-page opinion, the PCR court rejected all of defendant's contentions, concluding that defendant failed to establish a prima facie case of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). We have reviewed the record on appeal in light of the applicable legal standards and conclude that with one exception, defendant's contentions were properly rejected by the PCR court without the need for an evidentiary hearing. Defendant's first contention, however, warrants an evidentiary hearing to determine the circumstances surrounding defense counsel's advice that defendant should reject the State's plea offer. We therefore remand for an evidentiary hearing limited solely to the circumstances pertaining to the plea offer and defendant's decision to reject that offer upon the advice of counsel. In all other respects, we affirm the denial of PCR substantially for the reasons set forth in the PCR court's written opinion.

A-0531-18T4

## I.

## A.

On September 3, 2010, a Camden County Grand Jury returned a superseding indictment charging defendant with the murder of four-year-old B.T., the attempted murder of codefendant Martin Pierce, possession of a weapon for an unlawful purpose, unlawful possession of a weapon, and unlawful possession of an assault firearm.

Defendant stood trial before a jury that acquitted him of the murder of B.T. but found him guilty of the lesser offense of passion/provocation manslaughter pursuant to N.J.S.A. 2C:11-4(b)(2), a second-degree crime. The jury convicted defendant of the attempted murder of Pierce, a first-degree crime, and all remaining counts in the indictment.

The trial judge initially sentenced defendant to an aggregate term of thirty-three years imprisonment with an approximate twenty-nine year period of parole ineligibility imposed under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2., and the Graves Act, N.J.S.A. 2C:39-4 to -5. The trial court ordered the sentences imposed on the manslaughter, attempted murder, and assault firearm convictions to be served consecutively. The judge merged the remaining firearms counts with the assault firearm conviction.

A-0531-18T4

We affirmed defendant's convictions but remanded for resentencing, instructing the trial court to provide a statement of reasons for requiring the merged sentence imposed on the firearms convictions to be served consecutively to the two NERA convictions. The New Jersey Supreme Court denied defendant's petition for certification. State v. Lindsey, 223 N.J. 558 (2015).

The trial judge resentenced defendant to an aggregate term of twenty-eight years imprisonment with an approximate twenty-four and one-half year period of parole ineligibility. In accordance with the requirements of NERA, the consecutive sentences imposed on the passion/provocation manslaughter and attempted murder convictions each included a term of parole supervision in addition to the minimum period of parole ineligibility fixed at 85% of the term of imprisonment. N.J.S.A. 2C:43-7.2(c). As required by NERA, the period of parole supervision was five years for the first-degree attempted murder conviction and three years for the second-degree manslaughter conviction. Ibid. The only change to defendant's original sentence was a reduction in the sentence for unlawful possession of an assault firearm, which was reduced from ten years to a five-year term of imprisonment with a five-year period of parole ineligibility.

A-0531-18T4

B.

The factual circumstances leading up to the gunfight between defendant and codefendant Pierce are detailed in our opinion affirming defendant's convictions on direct appeal, State v. Lindsey, No. A-6303-11 (App. Div. Aug. 20, 2015) (slip op. at 1–4) and need not be repeated at length here.  The State over the course of eight days of trial testimony presented multiple witnesses who testified as to the personal animosity and prior confrontations between defendant and Pierce leading up to the fateful gunfight that took B.T.'s life.  For purposes of this appeal, it is sufficient to recount that on August 4, 2008, defendant rode his bicycle to his girlfriend's house.  Upon arriving at her house, defendant saw Pierce and three other men walking on the street.  Suspecting that Pierce was carrying a weapon in his backpack, defendant rode his bicycle to a nearby field to retrieve his firearm, which he previously had hidden there.  Now armed, defendant returned to the location where he had seen Pierce.

Defendant confronted Pierce and the three other men.  Children were in the area standing near Pierce.  Before the adult bystanders could evacuate the children from the scene, defendant and Pierce exchanged gunfire.  Defendant saw B.T.'s body lying in the street, but did not stop to render aid or call 9-1-1.

A-0531-18T4

Instead defendant fled.  He later had a friend stash the Tec-9 firearm he used in the gun battle.

## II.

Defendant raises the following contentions on this appeal:

POINT I

THE PCR COURT SHOULD HAVE HELD THAT DEFENDANT WAS ENTITLED TO RELIEF FOR VIOLATION OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE STANDARDS GOVERNING PETITIONS FOR POST-CONVICTION RELIEF.

A. DEFENSE COUNSEL FAILED TO ADEQUATELY ADVISE DEFENDANT OF THE STRENGTH OF THE STATE'S CASE.

B. DEFENSE COUNSEL ERRED IN ADVISING DEFENDANT TO REJECT A PLEA OFFER AND PROCEED TO TRIAL.

C. DEFENSE COUNSEL ERRED IN FAILING TO EXPLAIN TO DEFENDANT HIS MAXIMUM SENTENCE EXPOSURE.

D. DEFENSE COUNSEL ERRED IN FORCING DEFENDANT TO TESTIFY.

E. DEFENSE COUNSEL ERRED IN FAILING TO NOTE AND OBJECT TO

7

DEFENDANT'S APPEARANCE BEFORE THE JURY IN SHACKLES.

F. DEFENSE COUNSEL ERRED IN FAILING TO REQUEST NECESSARY AND CLARIFYING INSTRUCTIONS TO THE JURY REGARDING TRANSFERRED INTENT AND PASSION/PROVOCATION.

G. DEFENSE COUNSEL ERRED IN FAILING TO COMMENT IN HER SUMMATION ON THE CRITICAL RELATIONSHIP BETWEEN TRANSFERRED INTENT AND PASSION/PROVOCATION.

POINT II

THE COURT ERRED IN REFUSING TO GRANT DEFENDANT AN EVIDENTIARY HEARING REGARDING DEFENDANT'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL.

III.

Post-conviction relief serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must "establish, by a preponderance of the credible evidence, that he [or she] is entitled to the requested relief." State v. Mitchell, 126 N.J. 565, 579 (1992) (quoting State v. Marshall, 244 N.J. Super. 60, 69 (Law Div. 1990)).

Defendant's PCR petition raises claims of constitutionally deficient assistance of counsel. Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland, 466 U.S. at 686 (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The fact that a trial strategy fails to obtain for a defendant the optimal outcome is insufficient to show that counsel was ineffective. State v. DiFrisco, 174 N.J. 195, 220 (2002) (citing State v. Bey, 161 N.J. 233, 251 (1999)).

A-0531-18T4

The second prong of the <u>Strickland</u> test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. Put differently, counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different than if counsel had not made the errors. <u>Id.</u> at 694. This assessment is necessarily fact-specific to the context in which the alleged errors occurred—errors before trial, for example, may result in a defendant failing to enjoy a favorable plea agreement, while errors during trial may lead to an unfair conviction. <u>See</u> <u>id.</u> at 695 (noting the different questions posed when a defendant challenges a conviction rather than a sentence). When a defendant challenges a conviction, the second <u>Strickland</u> prong is particularly demanding: "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008) (quoting <u>State v. Castagna</u>, 187 N.J. 293, 315 (2006)).

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. <u>Preciose</u>, 129 N.J. at 462–63. The PCR court should grant an evidentiary hearing when a defendant is able to prove a prima facie case of ineffective assistance of counsel, there are material issues of

disputed fact that must be resolved with evidence outside of the record, and the hearing is necessary to resolve the claims for relief. R. 3:22-10(b); Preciose, 129 N.J. at 462. To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland test. Preciose, 129 N.J. at 463. "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Id. at 462–63.

"[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he [or she] was denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (emphasis omitted). The petitioner must allege specific facts sufficient to support a prima facie claim. Ibid. The petitioner must present these facts in the form of admissible evidence. In other words, the relevant facts must be shown through "affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid.

IV.

Defendant contends that his trial counsel was ineffective for advising him to reject a pretrial plea offer that would have capped the sentence at twenty-five

years.[1] Defendant certified that trial counsel explained he should reject the offer because his case was easy and that defense counsel felt good about proceeding to trial. Defendant contends trial counsel did little to explain the strength of the State's case, thereby depriving defendant of information necessary to make an informed decision whether to accept the plea offer. Defendant also certified that trial counsel did not inform him of his maximum sentencing exposure so that he could properly consider the State's offer to cap the sentence at twenty-five years.

A defendant's Sixth Amendment right to a fair trial extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012); State v. Taccetta, 351 N.J. Super. 196, 200 (App. Div. 2002). "In the context of a guilty

---

[1] The exact terms and circumstances of the plea offer are uncertain. See infra note 2. The State disputes that it ever offered defendant a twenty-five-year sentence. However, the PCR judge, who also presided over the trial, acknowledged, based on the judge's own file and personal recollection, that a twenty-five-year offer had in fact been made to defendant. We note that if the plea offer required defendant to plead guilty to murder, then a twenty-five year sentence would have been illegal, since the minimum sentence that may be imposed on a conviction for murder is thirty years without parole. N.J.S.A. 2C:11-3(b). The record does not make clear whether the State had offered to dismiss the murder count in favor of a guilty plea to aggravated manslaughter, which carries an ordinary term of imprisonment between ten and thirty years. N.J.S.A. 2C:11-4(c). The uncertainty regarding the terms of the plea offer, especially when viewed in the context that the State does not even acknowledge that it tendered a plea offer, highlights the inadequacy of the current record and underscores the need for an evidentiary hearing to clarify the circumstances surrounding the plea offer and its rejection.

A-0531-18T4

plea, counsel is required to give a defendant information sufficient 'to make a reasonably informed decision whether to accept a plea offer.'" Shotts v. Wetzel, 724 F.3d 364, 376 (3d Cir. 2013) (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)). "Knowledge of the comparative sentencing exposure between standing trial and accepting a plea offer" is crucial to providing a defendant with the necessary information to make an informed decision in accepting or rejecting a plea offer. Day, 969 F.2d at 43.

In the matter before us, the PCR court concluded that defendant failed to make a prima facie case that defense counsel provided ineffective assistance of counsel in advising defendant to proceed to trial and reject the State's twenty-five-year plea offer. The PCR court found that defendant presented no evidence establishing that defense counsel advised defendant to reject the twenty-five-year plea offer. The court also concluded that in any event, defendant could not establish prejudice, the second prong in the two-part Strickland test, because the plea offer was contingent upon an event that never came to fruition—codefendant also pleading guilty—and also because defendant ended up with a lesser sentence than the one contemplated in the plea offer. The PCR court also found that there were no material issues of disputed fact requiring an evidentiary hearing.

Our review of the record contradicts the PCR court's findings.  The PCR court found that defendant failed to present evidence in the form of certifications or affidavits showing that defense counsel advised defendant to reject the plea offer and proceed to trial.  However, defendant stated in a supplemental affidavit that "[t]here was a plea bargain offered by the Prosecutor's Office of Camden County for 25 years.  It was the contention of my counsel that I not take the plea because as she said, the case was easy."  Defendant also certified that "defense counsel told me generally that she felt good about proceeding to trial and accordingly advised me to go to trial."  Furthermore, defendant certified that his counsel advised him to reject a plea offer without detailing his maximum sentencing exposure and while doing "little to explain to [him] the strengths of the State's case."

As the New Jersey Supreme Court observed in Porter, "[t]he development and resolution of ineffective assistance of counsel claims frequently call for an evidentiary hearing 'because the facts often lie outside the trial record and because the attorney's testimony may be required.'" 216 N.J. 343, 354 (2013) (quoting Preciose, 129 N.J. at 462).  In the present case, any discussions between defendant and his trial counsel concerning the State's plea offer and defense counsel's evaluation of the strength of the State's expected trial proofs would

14

not have occurred on the record. Accordingly, any claim of ineffective assistance with respect to counsel's advice on accepting or rejecting a plea offer can only be supported by means of affidavit or certification. In this instance, we believe the statements made in defendant's certifications, when viewed in the light most favorable to defendant, are adequate to satisfy his burden of production for purposes of his entitlement to an evidentiary hearing. R. 3:22-10(b).

Of course, an evidentiary hearing would be unnecessary and unwarranted if the record were to show, as the PCR court found, that defendant could not possibly establish prejudice from his decision to reject the State's plea offer. See Lafler, 566 U.S. at 174 (holding that where a defendant's ineffective assistance claim rests on the improper rejection of a plea deal, a defendant must demonstrate prejudice by establishing that "but for counsel's deficient performance there is a reasonable probability he [or she] and the trial court would have accepted the guilty plea").

In this instance, the PCR court's conclusion that defendant could not establish prejudice under the second prong of Strickland is based on two independent grounds. First, defendant could not have reaped the benefit of the State's offer because it was contingent on codefendant Pierce also pleading

15

guilty, which Pierce refused to do. Second, defendant ultimately received a lesser sentence than the one that would have been imposed had he accepted the plea offer. Our review of the record, however, provides support for neither of the bases upon which the PCR court found that defendant could not have suffered prejudice by his rejection of the plea offer.

We first address the contingent nature of the plea offer. The PCR court found that the plea offer tendered to defendant was contingent on Pierce pleading guilty based on the following statement made by defendant's trial counsel at the initial sentencing hearing:

> Secondly -- and I think this is also something that should be considered strongly by the Court - - he was always willing to plea [sic] in this case. There were negotiations that were ongoing over the course of several years to [plead] this case, up until the time when the State indicated that there was no longer a plea available to [defendant] unless [codefendant Pierce] was going to plea [sic] and, of course, that was never the case. So, [defendant] went to trial when he had been willing to work out a plea. As I said, up until the time when that possibility was withdrawn by the State.

The PCR court considered this statement as evidence that defendant could not have accepted and effectuated the plea offer because it was contingent on codefendant also agreeing to plead guilty. However, counsel's statement suggests that there may have been a time when the State's plea offer was not

contingent on Pierce also pleading guilty, and that this contingency was imposed only later in the course of several years of ongoing negotiations.  The phrase "up until the time the State indicated that there was no longer a plea available to [defendant] unless [codefendant Pierce] was going to plea" indicates that, at some point, a plea offer had been tendered to defendant that was not dependent on Pierce's willingness to plead guilty.  (Emphasis added).

We recognize that defense counsel's above-quoted statement was made at sentencing in support of an argument that defendant had been willing to accept responsibility for his actions but was foreclosed from doing so because of Pierce's insistence on exercising his right to go to trial.  Viewed in the context of a sentencing allocution, counsel's statement might be interpreted to suggest that defendant never had an opportunity to make a timely acceptance of responsibility by pleading guilty pursuant to an offered plea agreement.  However, the literal phrasing of counsel's statement also supports the interpretation that the contingency was not imposed by the State at the outset of negotiations but rather was imposed only later, after the State had invested time and effort in prosecuting the case.

The point simply is that counsel's reference to plea negotiations during her sentencing allocution does not reveal the terms and conditions of the plea

offer with sufficient detail or precision from which we might reasonably conclude that defendant was precluded from ever accepting and effectuating the offer. Cf. Porter, 216 N.J. at 355 ("Certain factual questions, 'including those relating to the nature and content of off-the-record conferences between defendant and [the] trial attorney,' are critical to claims of ineffective assistance of counsel and can 'only be resolved by meticulous analysis and weighing of factual allegations, including assessments of credibility.'" (quoting State v. Pyatt, 316 N.J. Super. 46, 51 (App. Div. 1998)). Viewed in the light most favorable to defendant, defense counsel's statement is susceptible to the interpretation that defendant had the opportunity to accept the plea offer before the State imposed as a contingency that Pierce also accept the plea. Preciose, 129 N.J. at 462–63. Because it is possible to ascribe different meanings to defense counsel's statement, we find an evidentiary hearing is necessary to fully understand (1) the precise terms of the plea offer, (2) the circumstances in which it was tendered, (3) when exactly the State first made the plea offer contingent on Pierce pleading guilty, and (4) when in relation to the imposition of such a precondition did defense counsel give the advice now claimed to constitute ineffective assistance of counsel.

A-0531-18T4

We next address the PCR court's conclusion that defendant cannot show prejudice from his decision to reject the State's plea offer because he would have served more time under that offer than under the sentence he is currently serving following his trial convictions. It is true that the combined NERA and Graves Act parole ineligibility terms he is currently serving are slightly less than the twenty-five-year stipulated[2] sentence that apparently would have been imposed had he pled guilty pursuant to the State's plea offer. We do not believe, however, that for purposes of prejudice analysis under Strickland, the potential duration of imprisonment can be measured solely by reference to parole ineligibility terms. There remains a possibility that defendant will not earn release at his earliest and subsequent parole eligibility dates and thus might be required to serve the full twenty-eight-year sentence that was imposed. It also is possible that defendant may lose the commutation and work credits awarded during his incarceration. See N.J.S.A. 30:4-140; N.J.A.C. 10A:9-5.1. In that event, defendant may serve more time in prison than if he had been sentenced in accordance with the State's pretrial plea offer.

---

[2] The record before us does not make clear whether the twenty-five-year period refers to a maximum term of imprisonment or a period of parole ineligibility.

Furthermore, defendant's maximum potential term of imprisonment must account for the statutorily specified periods of parole supervision the trial court was required to impose as part of defendant's sentence for his two NERA convictions. N.J.S.A. 2C:43-7.2(c). Run consecutively, the three-year period of parole supervision imposed on his second-degree passion/provocation manslaughter conviction and the five-year period of parole supervision imposed on his first-degree attempted murder conviction combine for a total of eight years of parole supervision following defendant's release from prison. See State v. Friedman, 209 N.J. 102, 120 (2012) (requiring parole supervision terms on separate NERA convictions to be served consecutively where the sentencing court has sentenced a defendant to consecutive custodial NERA terms). Were defendant to be released on parole and thereafter have his parole revoked, he might be returned to prison and required to serve more time in prison than the twenty-eight-year aggregate "maximum" sentence.

In sum, although it is possible that defendant will ultimately spend less time in prison than he would have spent had the plea agreement been effectuated, it also is possible that he will serve more than twenty-five years in prison. Accordingly, the PCR court was mistaken in concluding that defendant cannot

A-0531-18T4

possibly have suffered prejudice from his decision to reject the State's plea offer.

V.

Defendant's remaining contentions lack sufficient merit to warrant extensive discussion in this written opinion. See R. 2:11-3(e)(2). As to these contentions, we adopt the thorough and cogent analysis set forth in the PCR court's written opinion.

With respect to defendant's claim that his counsel forced him to testify, the record shows that the trial court conducted an appropriate colloquy with defendant in open court during which defendant knowingly and voluntarily waived his right to remain silent and instead exercised his right to testify in his own defense. The record clearly shows that after being informed of his right to remain silent and after being given the opportunity to consult with trial counsel, defendant expressly told the court that he made the decision to testify knowingly and voluntarily, and that no one pressured him to testify. The PCR court, who was also the trial judge, added that defendant did not hesitate or appear reluctant to testify.

With respect to defendant's contention that his counsel was ineffective in her summation in explaining the passion/provocation defense and the concept of

21

transferred intent, the PCR court found that defense counsel gave an elaborate and effective summation, encompassing the very arguments defendant raised in his PCR petition.

With respect to defendant's contention that his counsel was ineffective in allowing the jury to view defendant in shackles, the record shows that careful attention was paid by counsel and the trial court to ensure that the jury did not see that defendant was wearing a leg brace. The court took adequate precautions, and the record shows that the jury never saw the restraining device.

Finally, we address defendant's contention that trial counsel was ineffective for failing to request a jury charge explicitly detailing the relationship between passion/provocation manslaughter and transferred intent, which, according to defendant, led the jury to reach inconsistent verdicts. On direct appeal, we rejected defendant's challenge to the inconsistency in the jury verdicts.

Defendant now seeks to reframe the jury instruction issue as a denial of his right under the United States and New Jersey Constitutions to the effective assistance of counsel. However, defendant raises this specific ineffective assistance argument for the first time on appeal. He did not present this argument to the PCR court.

In these circumstances, we decline to consider defendant's contention on its merits.

> It is a well-settled principle that . . . appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."
>
> [Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).]

Defendant's claim that counsel was ineffective in respect to the jury instructions does not go to the jurisdiction of the trial court. Nor does his contention raise an issue of great public importance that would warrant our exercising original jurisdiction. We therefore decline to consider this argument, which may be raised to the PCR court either by a motion to amend the PCR petition or by filing another petition.

## VI.

For the reasons explained in section IV of this opinion, we remand the matter to the PCR court to convene an evidentiary hearing solely on defendant's contention that counsel rendered ineffective assistance with respect to the advice

counsel gave to defendant concerning the State's plea offer.[3] In all other respects, we affirm the PCR court's decision to deny defendant's petition without a hearing. We do not retain jurisdiction.

Affirmed in part and remanded for proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] We note that in the event the PCR court on remand decides to grant defendant's petition, the appropriate relief would not be to order a new trial but rather to reoffer the plea agreement. Lafler, 566 U.S. at 174 (rejecting remedy of specific performance of plea agreement, as distinct from re-offering of plea agreement). That would preserve for the trial court its determination whether to accept the plea agreement and sentence defendant in accord with it. Ibid.; see also R. 3:9-3(e) (permitting the trial court to vacate a plea if it determines "the interests of justice would not be served by effectuating the [plea] agreement . . . or by imposing sentence in accordance with the court's previous indications as to sentence"). As noted, the current record does not indicate the terms of the plea offer. We therefore have no information before us concerning the periods of parole ineligibility and parole supervision period required by NERA.

A-0531-18T4